**UNITED STATES of America, Appellee,**

v.

**Mohammad AZEEM, also known as Khan Azim, Defendant–Appellant.**

**No. 1445, Docket 90–1635.**

United States Court of Appeals, Second Circuit.

Argued May 21, 1991.

Decided Sept. 30, 1991.

**14**

Eric Corngold, Brooklyn, N.Y. (U.S. Atty's. Office, E.D.N.Y., New York City, of counsel), for appellee.

Sam A. Schmidt, New York City (Barocas & Schmidt, of counsel), for defendant-appellant.

---

* Honorable Joseph T. Sneed, Senior Circuit Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

Before KEARSE and MAHONEY, Circuit Judges, and SNEED,* Senior Circuit Judge.

SNEED, Senior Circuit Judge:

## I.

### FACTS

The drug conspiracy began in April of 1987 when defendant Mohammad Azeem and two others, including a Drug Enforcement Agency (DEA) informant, met in Pakistan to discuss importing one kilogram of heroin into New York. In May of 1987, Azeem delivered the heroin to the informant, who transported it from Pakistan to New York.[1] The informant was unable to sell the heroin. He testified that he returned to Pakistan when Azeem told him to store the heroin in New York and come back to arrange a shipment to. Cairo, Egypt.

Upon the informant's return, Azeem, the informant, and the same third party arranged the delivery of three kilograms of heroin from Pakistan to Cairo. In June of 1987, the informant took the heroin to Cairo and delivered it to a new party, who thereupon was arrested.

The informant came back to New York in October of 1987 to attempt to sell the original one kilogram of heroin but once more was unsuccessful. He again stored the heroin in New York and returned to Pakistan in October of 1987. There was conflicting testimony at trial concerning whether Azeem sold his interest in the New York heroin to a coconspirator to satisfy a debt or whether he merely promised to give that party the proceeds once the New York heroin was sold. The testimony does not show when this agreement was reached.

Azeem moved temporarily to the Philippines in December of 1987, where he attempted to sell 200 grams of heroin to an undercover agent.

1. Azeem was convicted of conspiracy to import heroin based on this transaction.

The informant testified that in the summer of 1989, Azeem, apparently still unaware of the informant's true status, approached him with a scheme to get rid of the New York heroin. Azeem would volunteer to work for the DEA as an informant and claim that the heroin had recently been imported by someone else. The DEA met with Azeem and pretended to be fooled by his scheme. When Azeem arrived in New York, the DEA arrested him for the 1987 importation of the New York heroin.

On May 7, 1990, a jury convicted Azeem of conspiring to import heroin into the United States in 1987. The district court judge sentenced him under the Sentencing Guidelines. In calculating the amount of drugs involved for the purpose of determining the base offense level, the judge included the one kilogram of New York heroin, the three kilograms of heroin in the Cairo transaction, and the 200 grams in the Philippines transaction. The judge also increased the base offense level by two points on the *ground* that Azeem had given false testimony at trial.

Azeem claimed that the Sentencing Guidelines should not apply because the crime for which he was convicted, conspiracy to import heroin, ended before the November 1, 1987 effective date of the Guidelines. The judge disagreed, ruling that the case involved an offense which continued after the effective date of the Guidelines because the object of the conspiracy—that is, to obtain money by disposing of the heroin in New York—continued after 1987. Azeem also objected that the heroin from the other transactions should not have been included in his base offense level.

On appeal, Azeem renews his argument that he should not have been sentenced under the Sentencing Guidelines. He also continues to argue that the judge should not have included the Cairo transaction in determining the base offense level because 1) it was not part of the same crime and 2)

it was not a crime against the United States.[2]

## II.

## JURISDICTION

This court has jurisdiction under 18 U.S.C. § 3742.

## III.

## STANDARD OF REVIEW

Factual determinations underlying the district court's application of the Sentencing Guidelines are upheld unless they are clearly erroneous. *See United States v. Cousineau,* 929 F.2d 64, 67 (2d Cir.1991); *see also* 18 U.S.C. § 3742(e). The district court's legal interpretation of a sentencing guideline is reviewed de novo. *United States v. Irabor,* 894 F.2d 554, 555 (2d Cir.1990).

## IV.

## DISCUSSION

A. *Applicability of the Sentencing Guidelines*

Azeem's claim on appeal that the Guidelines are inapplicable is meritless. Azeem contends that he should not have been sentenced under the Guidelines because the offense for which he was convicted, conspiracy to import heroin, ended when the heroin reached the United States in May of 1987, prior to the November 1, 1987 effective date of the Guidelines. In the alternative, he argues that he terminated his role in the conspiracy prior to the effective date by consigning his interest.

■ This court has held that the Sentencing Guidelines apply to "straddle offenses," that is, continuing offenses begun

---

**2.** Azeem also objects to inclusion of the 200 grams of heroin sold in the Philippines for the same reasons. The government does not contest Azeem's objection to this transaction because the amount of drugs involved is so small that it will not affect Azeem's base offense level.

before November 1, 1987 and continuing after that date. *United States v. McCall,* 915 F.2d 811, 816 (2d Cir.1990). A conspiracy continues after the occurrence of the underlying offense and is not completed until the conspirators receive their payoffs. *See United States v. Knuckles,* 581 F.2d 305, 313 (2d Cir.) (holding that hearsay statements by a coconspirator are admissible into evidence when made "before the spoils are divided among the miscreants"), *cert. denied,* 439 U.S. 986, 99 S.Ct. 581, 58 L.Ed.2d 659 (1978); *see also United States v. Mennuti,* 679 F.2d 1032, 1035 (2d Cir. 1982) (holding that conspiracy prosecution was not barred by statute of limitations where payoffs had occurred within limitations period).

■ Obviously, the goal of the Azeem conspiracy was not merely to import the heroin but to sell it and distribute the proceeds. Accordingly, the district court properly found that this conspiracy did not end with the May 1987 heroin importation. The court also found that Azeem did not terminate his involvement by consigning his interest, and that in fact Azeem personally committed acts in furtherance of the conspiracy, by pretending to be a DEA informant in order to dispose of the heroin, as late as 1989. Therefore, the district court's finding that Azeem's offense continued after the November 1, 1987 effective date of the Sentencing Guidelines was not clearly erroneous.

B. *Inclusion of Separate Conspiracies in Base Offense Level*

■ Azeem's second claim is that the Cairo heroin should not have been included with the New York heroin in his base offense level because each transaction was the object of a different conspiracy, with different goals and time frames, and not part of a common scheme. This claim also lacks merit.

■ Section 1B1.3 of the Sentencing Guidelines provides that the base offense level for drug-related crimes shall be determined on the basis of all drug transactions that were "part of the same course of conduct *or* common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2) (Nov.1990) (emphasis added); *see also id.,* commentary n. 2. The "same course of conduct" is defined apart from "common scheme or plan" and looks to "whether the defendant repeats the same type of criminal activity over time" without requiring that acts be connected by common participants or an overall scheme. *United States v. Perdomo,* 927 F.2d 111, 115 (2d Cir.1991) (sales of same drug, cocaine, were part of same course of conduct despite different conspiracies with different members and methods, and despite four-month interval between sales).

Here, Azeem used the same courier to transport heroin on two separate occasions. The Cairo transaction began shortly after the New York heroin reached the United States. The district court's finding that these transactions represented the same type of criminal activity and thus the same course of conduct was not clearly erroneous.

C. *Inclusion of Foreign Crimes in Base Offense Level*

■ While we reject Azeem's claim that the Cairo and New York transactions were not part of the same course of conduct, we agree that the Cairo transaction should not have been included in the base offense level calculation because it was not a crime against the United States.

The district court's inclusion of the Cairo heroin affected Azeem's sentence in the following manner. Azeem was convicted of conspiracy to import one kilogram of heroin. Importation of one to three kilograms of heroin requires a base offense level of 32. *See* U.S.S.G. §§ 2D1.1(a)(3), 2D1.1(c)(6). Given a two point increase to Level 34 for false testimony, and a Criminal History Category of I, which are not challenged on appeal, the guideline sentence for the New York heroin alone would

have been 151 to 188 months. *See* U.S.S.G. Ch. 5, Part A.

By adding the three kilograms of Cairo heroin, the district court increased the base offense level to 36 (importation of three to ten kilograms, plus two points for false testimony), with a guideline sentence of 188 to 235 months. *See* U.S.S.G. §§ 2D1.1(c)(5); Ch. 5, Part A. The district court then sentenced Azeem to 188 months imprisonment.

To determine whether the district court's treatment of the Cairo transaction is proper under the Guidelines, we must establish their intent with respect to the issue of foreign crimes and activities. As in any case of statutory interpretation, our starting point must be the language of the Sentencing Guidelines themselves. *See Lewis v. United States*, 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980).

The Guidelines section on base offense levels is broadly worded to include "all such acts and omissions that were part of the same course of conduct or common scheme or plan," but does not explicitly address the issue of foreign crimes and activities. U.S.S.G. § 1B1.3(a)(2). However, the Guidelines elsewhere note that foreign *sentences* may not be used in computing a defendant's criminal history category, but may be used for upward departures from the otherwise applicable range. *See* U.S.S.G. §§ 4A1.2(h), 4A1.3(a).

 From these provisions, it follows that Congress, while it has not remained entirely silent, has chosen to assign to foreign crimes a rather limited role. We decline to find that Congress intended to require that foreign crimes be considered when calculating base offense levels simply because Congress did assign foreign crimes a role in fixing upward departures, while remaining silent on their role in calculating base offense levels. Not every congressional silence is pregnant. *See Burns v. United States*, ── U.S. ──, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991). In general, congressional consideration of an issue in one context, but not another, in the

same or similar statutes implies that Congress intends to include that issue only where it has so indicated. *See United States v. Diaz*, 712 F.2d 36, 39 (2d Cir.1983) (intent to include Puerto Rican convictions in firearm statute will not be implied where statute itself is silent but similar statutes expressly address inclusion); *see also California Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175–77 (9th Cir.1990) (nonpecuniary assistance is not included in provision dealing with "financial assistance" where Congress explicitly addressed nonpecuniary programs in other provisions of same statute). In this case, Congress has already shown that where it intends to include foreign crimes in sentencing, it will do so.

Moreover, there are good reasons to avoid creating a new use for foreign crimes in sentencing. To do so would require distinguishing between activities that violate both domestic and foreign law and those which violate only domestic law or only foreign law. Examples of activities that violate one, but not both, foreign and domestic laws could be the use and sale of certain drugs that would have violated our law, but not the foreign law where sold and used, or a certain use of alcohol that violates the foreign law where used but would not have done so under domestic law. To permit foreign crimes to figure in fixing the base offense level would require courts to perform a careful comparative analysis of foreign and domestic law in such instances. At some point the advantages of simplicity should prevail. This is one of them.

Were a global approach required, we would soon find it necessary to determine the appropriate evidence that must be produced by the prosecution to show that the activity occurred and that it violated foreign law. For example, we would have to decide whether an arrest or conviction by the foreign country is necessary for inclusion and, if so, whether it should be disregarded if plainly unconstitutional by our law. The fact that section 4A1.2(h) of the

**18**

Guidelines allows upward departures only for foreign *sentences,* as opposed to uncharged crimes or arrests, apparently reflects some of these concerns. *See* U.S.S.G. § 4A1.2(h).

Without a clear mandate from Congress, we decline to create the complexities that the inclusion of foreign crimes in the base offense level calculation would generate. These issues are best considered and resolved by Congress.

The discretionary use of foreign convictions to increase a sentence within a guideline range rests on different footing. *United States v. Soliman,* 889 F.2d 441, 444–45 (2d Cir.1989), is such a case. It relied on the district court's broad discretion to consider any information concerning the defendant's background, character, or conduct when determining whether to increase the sentence within the Guidelines range or depart upward from that range. *See id.* at 445 (citing U.S.S.G. § 1B1.4 & 18 U.S.C. § 3661) (stating that "[i]n determining the sentence to impose within the guidelines range, or whether a departure from the guidelines is warranted, the court may consider, without limitation, any information concerning the background, character and conduct of the defendant, unless otherwise prohibited by law"). The district court does not possess the same broad discretion in determining what is the proper Guideline range. Thus, consideration of Azeem's foreign activities in the calculation of his base offense level was inappropriate.

AFFIRMED in part; SENTENCE VACATED and REMANDED for resentencing.