**EASTERN ENTERPRISES, Plaintiff,**

v.

**Donna E. SHALALA et al., Defendants.**

**C.A. No. 93–12372–WF.**

United States District Court,
D. Massachusetts.

March 30, 1996.

John T. Montgomery, William L. Patton, Ropes & Gray, Boston, MA, David Martland, Hutchins, Wheeler & Dittmar, Boston, MA, Rosa C. Hallowell, Gadsby & Hannah L.L.P., Boston, MA, for Eastern Enterprises.

Robert A. Murphy, Casner & Edwards, Boston, MA, for Donna E. Shalala, Joseph P. Connors, Sr., Marty D. Hudson, Thomas O.S. Rand, Elliott A. Segal, Carlton R. Sickles, Gail R. Wilensky, John Doe.

Peter Buscemi, Morgan, Lewis & Bockius, Washington, DC, Robert A. Murphy, Casner & Edwards, Boston, MA, John R. Mooney, Beins, Axelrod, Osborne, Mooney & Green, P.C., Washington, DC, for United Mine Workers of America Combined Funds.

Gretchen E. Jacobs, Department of Justice, Federal Programs Branch, Washington, DC, for Shirley S. Chater.

Kenneth A. Sweder, Stroock Stroock & Lavan, Boston, MA, for Peabody Holding Co., Eastern Associated Coal Corporation Inc.

## MEMORANDUM AND ORDER

WOLF, District Judge.

The following analysis is based upon the transcript of the decision rendered orally on February 1, 1996, denying plaintiff Eastern Enterprises' motion for summary judgment and denying third-party defendant Peabody Holding Company's ("Peabody") motion to dismiss. This memorandum adds citations, revises some of the discussion and deletes certain non-essential matters.

The transcript of the February 1, 1996 hearing is being prepared and may be acquired from the court reporter.

\*     \*     \*

I. *Plaintiff's Motion for Summary Judgment*

Plaintiff Eastern Enterprises has filed a motion for summary judgment on its complaint seeking a declaratory judgment that beneficiaries assigned to the plaintiff by the Social Security Administration, pursuant to 26 U.S.C. § 9706(a)(3), and related regulations, should have been assigned to Eastern Associated Coal Corporation ("EACC"), a former subsidiary or affiliate of plaintiff, whose stock was acquired by Peabody in 1987. This court's review is under the Administrative Procedures Act, 5 U.S.C. § 551 *et seq.*[1] As the parties recognize, the deci-

---

1. For the reasons stated in the Federal Defendant's Opposition to the Motion of Eastern Enterprises to Supplement the Record in Support of Summary Judgment on Statutory Interpretation Claims (Docket No. 63), this court's review should be addressed to the record upon which the challenged action is based. Thus, it does not now appear that the court should consider the decisions of the Social Security Administration regarding the USX/United States Steel Mining Company and Guyan Eagle Investment Company matters that the plaintiff submitted. *See* Memorandum in Support of Eastern's Motion to Supplement the Record in Support of Summary

sion of the Social Security Administration is ripe for review on summary judgment.

This dispute concerns the Social Security Administration's assignment of Samuel East, a miner, to the plaintiff as a person entitled to pension benefits under the Coal Act and related regulations.[2] It is undisputed that East did not work for any company that was a signatory to the 1978 Coal Wage Agreement or any subsequent agreement. Thus, there was no company to which he could be assigned pursuant to 26 U.S.C. § 9706(a)(1) or (2). The parties also do not dispute that prior to the effective date of the 1978 Coal Agreement, East was employed by Eastern Enterprises for a longer period of time than he was employed by any other signatory operator as defined in the Coal Act. Thus, the Social Security Administration assigned East to plaintiff pursuant to its interpretation of 26 U.S.C. § 9706(a)(3).

East's situation, in effect, is a test case. The Social Security Administration evidently intends to assign all similarly situated miners to the plaintiff. Plaintiff asserts that this group of miners is more appropriately assigned to EACC, which, it contends, was the successor to its coal operations. Plaintiff asserts that ultimately Peabody is responsible because when Peabody acquired the stock of EACC it assumed EACC's liabilities. The decision with regard to East is expected, by the normal operation of collateral estoppel, to decide the issue of the propriety of assignments to Eastern Enterprises of similarly situated miners in other disputes between Eastern Enterprises and the Social Security Administration in which the facts are not materially different than those in East's case.[3]

■ For the reasons stated by the Social Security Administration in its opposition to the motion for summary judgment, the court finds that the Social Security Administration properly assigned liability for East to the plaintiff pursuant to 26 U.S.C. § 9706(a)(3).[4] The statute is not ambiguous. Rather, the Coal Act statute clearly manifests an intent that the Social Security Administration assign miners like East to the signatory to a pre–1978 Coal Wage agreement which employed the miner for the greatest period of time. If there is a successor to that signatory company which has assumed responsibility for such payments, the pre–1978 signatory operator has a right to bring a civil action for what is, in effect, indemnification.[5]

More specifically, § 9706(a) is not ambiguous. With regard to East, the statute clearly prescribes assignment to plaintiff. The statute's failure to provide for the assignment of East to the plaintiff's alleged successor, EACC, was neither an oversight nor an ambiguity. Because the Coal Act makes several references to successors,[6] the court infers that the omission of the term successor from § 9706(a)(3) was intended by Congress.[7]

Judgment on the Statutory Interpretation Claims (Docket No. 57); Affidavit of William S. Elias II (Docket No. 58). As discussed infra, however, this limitation is not material because the court has read those decisions and finds they do not alter the conclusion that the plaintiff's motion for summary judgment on nonconstitutional grounds is without merit.

2. 26 U.S.C. § 9706 et seq.; 20 C.F.R., Part 422.

3. See South Boston Allied War Veterans Council v. City of Boston, 875 F.Supp. 891, 907–908 (D.Mass.1995) (citing Allen v. McCurry, 449 U.S. 90, 96, 101, 101 S.Ct. 411, 418, 66 L.Ed.2d 308 (1980); Kowalski v. Gagne, 914 F.2d 299, 302 (1st Cir.1990)).

4. Federal Defendant's Opposition to Eastern Enterprises' Motion for Summary Judgment on Statutory Interpretation Claims (Docket No. 48) at 16–20.

5. See 26 U.S.C. § 9706(f)(6).

6. See 26 U.S.C. § 9701(c)(2)(A) ("a related person shall also include a successor in interest"); 26 U.S.C. § 9706(b)(2) ("If a person becomes a successor of an assigned operator after the enactment date [of the Coal Act] . . .).

7. See Estate of Bell v. Commissioner, Internal Revenue Service, 928 F.2d 901, 904 (9th Cir.1991) ("Congress is presumed to act intentionally and purposely when it includes language in one section, but omits it in another); United States v. Azeem, 946 F.2d 13, 17 (2nd Cir.1991) ("In general, congressional consideration of an issue in one context, but not another, in the same or similar statutes implies that Congress intends to include that issue only where it has so indicated."); United States v. Espinoza–Leon, 873 F.2d 743, 746 (4th Cir.1989) ("Where Congress includes particular language in one section of a statute, but omits it in another section of the

In addition, the decision not to include successors in § .9706(a)(3) is rational. It provides a comparatively simple way for the Social Security Administration to assign responsibility for a miner like East. It imposes a duty on the pre–1978 signatory operator, which is likely to be most familiar with the unique facts of its situation, to collect from anyone who may have agreed to assume its liability or is otherwise obligated to do so. Section, 9706(f)(6) makes clear that the Coal Act statute does not preempt or preclude such private rights of action. Section 9706(f)(6) expressly states that: "Nothing in this section shall preclude the right of any person to bring a separate civil action against another person for responsibility for assigned premiums, notwithstanding any prior decision of the Commissioner."

The Coal Act is silent with regard to who must be assigned beneficiaries if § 9706(a)(3) applies and the pre–1978 signatory operator who would otherwise be assigned the beneficiary is no longer in business. As plaintiff points out, the Social Security Administration has decided to assign such beneficiaries to the successors of pre–1978 signatory operators if such successors are now doing business. This provision, however, is of no assistance to Eastern Enterprises because it is not out of business.

█ If the Social Security Administration had promulgated a regulation imposing plaintiff's liability, as now defined by the Social Security Administration, on Eastern Enterprises' alleged successors, that regulation would appear to be vulnerable to attack by successors, even under the deferential standard of *Chevron*.[8] *Chevron* provides that "if the statute is silent or ambiguous with re-

spect to the specific issue, the question for the court is whether the agency's [administrative interpretation] is based on a permissible construction of the statute."[9] However, "[t]he judiciary is the final authority on issues of statutory interpretation and must reject administrative constructions which are contrary to clear congressional intent."[10]

Two decisions concerning this court's sentencing of Raymond J. Patriarca suggest that ambiguity, like beauty, may be in the eye of the beholder.[11] In *Patriarca*, this court found that the United States Sentencing Commission guideline at issue was ·ambiguous.[12] The First Circuit found that it was clear.[13] On the pertinent point, the Coal Act is to this court more clear than the Sentencing Guideline was in *Patriarca*.

If, however, the statute were to be deemed ambiguous with regard to its application to East, this court finds that the Social Security Administration's interpretation resulting in the assignment of East to the plaintiff, and leaving it to the plaintiff to impose liability on its alleged successors, is a reasonable construction of the statute deserving of deference under *Chevron*.[14]

The fact that the Social Security Administration has equivocated in its interpretation of the statute as it applies to Eastern Enterprises does not qualify this conclusion. The Social Security Administration has now authoritatively determined that if a pre–1978 signatory operator is at present in business, it will assign beneficiaries similarly situated to East to that operator pursuant to § 9706(a)(3). This is a permissible and appropriate interpretation of the statute.

same Act, it is generally presumed that Congress acted intentionally and purposely in excluding the particular language.").

8. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

9. *Id.* at 843, 104 S.Ct. at 2781.

10. *Id.* at 843, n. 9, 104 S.Ct. at 2781.

11. *Compare United States v. Patriarca,* 807 F.Supp. 165, 189 (D.Mass.1992) (Sentencing

Guidelines are ambiguous regarding the meaning of the phrase "underlying racketeering activity" for the purpose of determining relevant conduct in a RICO case) *and United States v. Carrozza,* 4 F.3d 70, 79 (1st Cir.1993) (the application of the relevant conduct provision to the term "underlying racketeering activity" is "straightforward and unambiguous").

12. 807 F.Supp. at 189.

13. 4 F.3d at 79.

14. *Chevron,* 467 U.S. at 843, 104 S.Ct. at 2782.

In addition, the Social Security Administration's assignment of beneficiaries in the USX/United States Steel Mining Company and Guyan Eagle matters does not alter the analysis or result of plaintiff's motion for summary judgment. As noted earlier, *see* footnote 1, the USX and Guyan Eagle matters are not properly part of the record before this court for review.[15] More importantly, it appears that in those matters that assignments were made to successor companies only after the Social Security Administration's factual determinations that no otherwise assignable signatory operators or related persons remained in business. Thus, those cases are factually distinguishable from this case. The decisions in those cases were not made because the Social Security Administration used a different standard for making assignments.

Finally, addressing a point that was raised in plaintiff's memorandum, but not argued on February 1, 1996, this is not a case in which it is necessary to interpret an ambiguous statute to require assignment to plaintiff's alleged successor in order to avoid a grave and doubtful constitutional question.[16] First, as stated earlier, the statute is not ambiguous. If it is unconstitutional as written, the court should declare it unconstitutional. Second, at this point the statute does not appear to this court to be unconstitutional as applied to pre–1978 signatory operators, like the plaintiff in this case.[17]

In view of the foregoing, plaintiff's motion for summary judgment is hereby DENIED.

## II. Third Party Defendant Peabody's Motion to Dismiss

Peabody and its affiliates are third-party defendants, sued by Eastern Enterprises, which is a counterclaim-defendant with regard to allegations made by the United States Mine Workers of America Combined Fund (the "UMWA Fund"). Peabody and its affiliates have moved to have Eastern's claim against them dismissed. The motion to dismiss is, however, without merit and is being denied, essentially for the reasons stated in Eastern Enterprises' opposition memorandum.[18]

This court's jurisdiction over the third-party defendants is demonstrated by plaintiff's affidavits, which make a prima facie showing supported by specific verified facts.[19] Plaintiff's affidavits indicate that the sale of EACC to Peabody involved telephone calls to individuals in Boston, as well as meetings and negotiations held in Boston. This activity is sufficient to satisfy the Massachusetts Long Arm Statute's requirement that the cause of action arise out of the transacting of business in the Commonwealth.[20]

---

**15.** The court recognizes that this observation may be inconsistent with the dicta in its decision in *Apex Construction Co., v. United States*, 719 F.Supp. 1144, 1147 n. 1 (D.Mass.1989), to the effect that one possible grounds for obtaining discovery beyond the administrative record may be "discovery of the agency's contemporaneous construction of a particular term or regulation where the meaning is vague or ambiguous or where the construction used in the particular case appears inconsistent." It now appears that this court's observation, in dicta, may have been incorrect.

**16.** *See United States v. Monsanto*, 491 U.S. 600, 611, 109 S.Ct. 2657, 2664, 105 L.Ed.2d 512 (1989) (where statutory language is truly ambiguous, "courts should construe statutes to avoid decision as to their constitutionality."); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Bldg. & Constr. Trades Council*, 485 U.S. 568, 575, 108 S.Ct. 1392, 1397, 99 L.Ed.2d 645 (1988) ("where an otherwise acceptable interpretation of a stat-

ute would raise serious constitutional problems, the Court will construe the statute to avoid such problems unless such construction is plainly contrary to the intent of Congress").

**17.** *See Davon, Inc. v. Shalala*, 75 F.3d 1114 (7th Cir.1996) (rejecting constitutional challenges based on due process and takings clause claims).

**18.** *See* Eastern Enterprises' Opposition to Third Party Defendants' Motion to Dismiss (Docket No. 20).

**19.** Eastern Enterprises' Opposition to Third Party Defendants' Motion to Dismiss at Exh. A (Affidavit of Robert W. Weinig), Exh. B (Affidavit of Fred C. Raskin), Exh. C (Affidavit of Truman S. Casner) (Docket No. 20).

**20.** *Ealing Corp. v. Harrods Ltd.*, 790 F.2d 978, 982–83 (1st Cir.1986) (citing *Ross v. Ross*, 371 Mass. 439, 358 N.E.2d 437 (1976)); M.G.L. ch. 223A § 3(a).

These actions also demonstrate that while purchasing EACC and Coal Properties Corporation, Peabody established the minimum contacts necessary to satisfy the constitutional requirements of due process.[21] Requiring Peabody to appear in Massachusetts, rather than in New York, does not place an unfair burden upon the company and is more convenient for the plaintiff. In addition, maintaining the case in Massachusetts serves the interest of judicial efficiency since this court has substantially addressed the motion for declaratory judgment. Finally, it does not appear that the federal court in any other jurisdiction has a special interest in the substantive social policy involved that would justify transfer from this court. Considering these circumstances, it is fair to have the case proceed in Massachusetts.[22]

In its counterclaim against Eastern Enterprises, the UMWA Fund seeks a declaratory judgment rather than damages. However, this fact does not preclude the maintenance of a third-party action.[23] A third-party claim may be brought under Fed. R.Civ.P. 14(a) when the third party's liability is in some way dependent on the outcome of the main claim, or when the third-party is secondarily liable to the defendant. There is no express requirement that the main claim be for damages.[24] If the UMWA Fund prevails in this case, Eastern Enterprises will, as a practical matter, be liable for an amount estimated to be one hundred million dollars. Eastern Enterprises seeks in its third-party action to impose this liability on the third-party defendants. This is permissible.

Finally, Eastern Enterprises has stated a claim on which relief can be granted. For their motion to dismiss to be granted, the third-party defendants would have to show there is clearly no set of facts on which Eastern Enterprises is entitled to relief.[25] Eastern Enterprises' allegation that all liability regarding its mining operations was assumed, first by EACC and then by Peabody, when it bought the stock of EACC, is sufficient to state a claim on which relief may be granted.[26]

Accordingly, the motion to dismiss the third-party complaint is hereby DENIED.

---

21. *Id.* at 983–84.

22. *See United Electrical, Radio and Machine Workers of America v. 163 Pleasant Street Corp.,* 987 F.2d 39, 46 (1st Cir.1993). This court is one of the permissible places in which this case may proceed. The question of a possible change of venue pursuant to 28 U.S.C. § 1404 is not now before the court.

23. *See* Fed.R.Civ.P. 14(b) ("When a counterclaim is asserted against a plaintiff, the plaintiff may cause a third party to be brought in under circumstances which under this rule would entitle a defendant to do so.").

24. *See* 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1446 at 355 (1990) (citing *Monarch Life Ins. Co. v. Donahue,* 702 F.Supp. 1195 (D.C.Pa.1989); *Prudential Insur. Co. of America v. BMC Industries, Inc.,* 113 F.R.D. 102, 103 (D.C.N.Y.1986)).

25. "In considering a motion to dismiss [under Fed.R.Civ.P. 12(b)(6)], a court must take the allegations in the complaint as true and must make all reasonable inferences in favor of the plaintiffs." *Watterson v. Page,* 987 F.2d 1, 3 (1st Cir.1993). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Miranda v. Ponce Federal Bank,* 948 F.2d 41, 44 (1st Cir.1991) (quoting *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)).

26. At the February 1, 1996 hearing, Peabody suggested that it may have some unique legal defenses to the third-party complaint. The merits of any such defenses have neither been presented nor decided in the pending motion to dismiss.