**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 97-50358

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

PASCUAL LEVARIO-QUIROZ,

Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

November 25, 1998

Before POLITZ, Chief Judge, and WIENER and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

Pascual Levario-Quiroz (Levario) pleaded guilty to illegal importation of a firearm, 18 U.S.C. § 922(1), and illegal entry into the United States, 8 U.S.C. § 1325(a), and was sentenced consecutively to 60 months on the firearm count and 6 months on the entry charge. The district court followed a Presentence Investigation Report which cross referenced Sentencing Guidelines

1

authorizing higher offense levels if a firearm had been used by the defendant in another crime that consisted of aggravated assault with attempt to murder and if a law enforcement officer had been assaulted in the commission of or flight from the crimes of conviction. The only issues on appeal are whether the district court erred in referring to the other firearm-related crime provision and the official victim provision because the defendant's aggravated assaults were foreign offenses involving foreign victims.

I.

On November 5, 1996, Pascual Levario-Quiroz (Levario) shot and killed a man in Ojinaga, Mexico. As Mexican law officers pursued Levario, he fired at them with a semiautomatic rifle. Levario was wounded by the gunfire of the officers before he crossed the Rio Grande River and entered the United States. Mexican officials notified the U.S. Border Patrol in Presidio County, Texas, that Levario had killed a man in Mexico and engaged in a gun battle with law officers before fleeing into the United States. Texas and United States law enforcement officers captured the wounded Levario at his mother's house in Redford, Texas, on November 7, 1996.

Levario was indicted for illegal importation of a firearm into the United States (count 1), transportation of a firearm in foreign commerce while under felony indictment (count 2), and illegal entry into the United States (count 3). Levario pleaded guilty to counts 1 and 3 in exchange for dismissal of count 2. The district court relied upon a Presentence Investigation Report (PIR) in determining Levario's sentence. The PIR (1) applied the Sentencing Guideline for unlawfully transporting a firearm, United States Sentencing Guideline (U.S.S.G.) § 2K2.1; (2) used the cross reference provision in U.S.S.G. § 2K2.1(c)(1), which authorized application of U.S.S.G. § 2X1.1 if the defendant used any firearm in another crime, which may be a federal, state or local offense,

2

U.S.S.G. § 2K2.1 n.14; and (3) applied U.S.S.G. § 2X1.1's cross reference provision permitting the use of U.S.S.G. § 2A2.1, which covers assault with an attempt to commit murder and attempted murder.

The PIR recommended U.S.S.G. § 2A2.1(a)(1) because its base offense level of 28 was higher than the base offense level in U.S.S.G. § 2X1.1. Three levels were added for Levario's firing at Mexican law officers pursuant to U.S.S.G. § 3A1.2(b), which covers assaulting a law enforcement officer in the commission of or flight from the crimes of conviction. Finally, two levels were added for obstruction of justice, bringing the total offense level to 33.

Levario did not contest the PIR description of his conduct as including his killing a person in Mexico and engaging in a gun battle with Mexican officers. Rather, he objected to the cross reference to U.S.S.G. § 2A2.1 and the three level adjustment for assaulting an officer, arguing that foreign conduct can be considered in calculating base offense levels only when expressly authorized by the Sentencing Guidelines. The court overruled Levario's objections and applied the sentencing calculations as recommended by the PIR, which provided for a sentencing range of 135 to 168 months. Because the bottom of this sentencing range exceeded the maximum sentences provided for by law, the district court sentenced Levario consecutively to maximum sentences of 60 months for illegally importing the firearm and 6 months for illegally entering the United States. Levario appealed. We vacate Levario's sentence and remand for resentencing.

II.

The district court's factual findings are reviewed for clear error, but we review interpretations of the Sentencing Guidelines *de novo*. *United States v. Sylvester*, 143 F.3d 923, 931 (5th Cir. 1998) Accordingly, the district court's legal interpretation of the Sentencing Guidelines as authorizing its

consideration of Levario's conduct in a foreign country as relevant conduct in determining the sentencing range and in imposing the sentences is subject to *de novo* review. *Id.*

## III.

Levario argues that the Sentencing Guidelines cannot authorize the consideration of his foreign offenses or assaults upon foreign law enforcement officers as relevant conduct because the offenses occurred in another nation. He contends that because he cannot be held criminally accountable for his foreign acts in United States courts, the district court could not consider them in sentencing. Criminal accountability based on offenses of conviction, however, is different from sentencing accountability, which considers a wider range of conduct. *United States v. Matthews*, 116 F.3d 305, 307 (7th Cir. 1997). Courts are to consider more than the offense of conviction itself in fitting the sentence to the crime and the criminal. *See Witte v. United States*, 515 U.S. 389, 398, 114 S. Ct. 1921 (1995); U.S.S.G. § 1B1.4. Although we have not addressed the issue directly, other circuits have held that a sentencing court is not prohibited from considering foreign conduct as relevant conduct simply because the defendant cannot be held criminally accountable for the foreign offenses in the United States. *See United States v. Dawn*, 129 F.3d 878, 881 (7th Cir. 1997). *But see United States v. Azeem*, 946 F.2d 13 (2d Cir. 1991); *United States v. Chunza-Plazas,* 45 F.3d 51 (2d Cir. 1995). *See also*, *United States v. Farouil*, 124 F.3d 838, 844-45 (7th Cir. 1997) (distinguishing *Azeem* and *Chunza-Plazas)*. Therefore, we must examine the Sentencing Guidelines themselves to determine whether they permit the consideration of Levario's foreign offenses in imposing sentences for his domestic crimes of conviction.

## IV.

Levario's foreign offenses do not literally fall within the definition of "relevant conduct" which

is defined, in pertinent part, by the Sentencing Guidelines as: "all acts and omissions committed . . . or willfully caused by the defendant; and . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]" U.S.S.G. § 1B1.3(a)(1)(A). Levario did not commit the offenses in Mexico during the commission of his crimes of conviction (illegal entry and importation of a firearm into the United States), in preparation for his crimes of conviction, or in the course of attempting to avoid detection or responsibility for his crimes of conviction. Nor do Levario's foreign offenses literally constitute "relevant conduct" under U.S.S.G. § 1B1.3(a)(2), which provides that "relevant conduct" includes, "solely with respect to offenses of a character for which §3D1.2(d) would require grouping of multiple counts, all acts and omissions described . . . above that were part of the same course of conduct or common scheme or plan as the offense of conviction[.]" Levario's foreign offenses were part of the same course of conduct as the offense of conviction, but they were not offenses of a character for which § U.S.S.G. 3D1.2(d) would require grouping of multiple counts. Section 3D1.2(d) specifically excludes from its operation all offenses in Chapter Two, Part A, which includes assault with intent to commit murder; attempted murder; aggravated assault; minor assault; and obstructing or impeding officers. U.S.S.G. §§2A2.1-2A2.4. The Background comment for U.S.S.G. § 3D1.2 explains that:

> [a] primary consideration in this section is whether the offenses involve different victims. For example, a defendant may stab three prison guards in a single escape attempt. Some would argue that all counts arising out of a single transaction or occurrence should be grouped together even when there are distinct victims. Although such a proposal was considered, it was rejected because it probably would require departure in many cases in order to capture adequately the criminal behavior. Cases involving injury to distinct victims are sufficiently comparable, whether or not the injuries are inflicted in distinct transactions, so that each such count should be treated separately rather than grouped together.

5

Although, in the ordinary sense of words, Levario's offenses in Mexico occurred in the "same course of conduct" as his illegal entry and importation of the firearm into the United States, they did not under the definition of that term according to the Sentencing Guidelines.

IV.

Levario further argues that the district court incorrectly interpreted and applied U.S.S.G. § 2K2.1's cross reference provision to enhance his firearms sentence. We agree. That cross reference provision, in pertinent part, provides that: "If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply [] § 2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to <u>that other offense</u>, if the resulting offense level is greater than that determined above[.]" U.S.S.G. § 2K2.1(c)(1)(A) (emphasis added). However, Application Note 14 of that subsection, in essence, provides that the offense level of <u>that other offense</u> "may be a federal, state, or local offense."[1] Because the terms "another offense" and "other offense" referred to by U.S.S.G. § 2K2.1 (c)(1) and (c)(1)(A) were not defined prior to the addition of Application Note 14, and because of the context within which they appear, we conclude that Application Note 14 was probably added to make it clear that state and local, as well as federal, offenses could be used in determining the offense level under U.S.S.G. § 2X1.1. We are not persuaded by the Government's argument that the use of

---

[1] Application Note 14 states: "Under subsection (c)(1), the offense level for the underlying offense (which may be a federal, state, or local offense) is to be determined under § 2X1.1 (Attempt, Solicitation, or Conspiracy) or, if death results, under the most analogous guideline from Chapter Two, Part A, Subpart 1 (Homicide)." In referring to "the underlying offense" Application Note 14 evidently intends to refer to "that other offense" mentioned in U.S.S.G. § 2K2.1(c)(1)(A), i.e., the offense in connection with which the defendant used or possessed any firearm in accordance with U.S.S.G. § 2K2.1(c)(1).

6

the word "may" indicates the drafter's intention that "the other offense" referred to in U.S.S.G. §2K2.1(c)(1)(A) may be a foreign "federal, state, or local offense." Because the Sentencing Guidelines do not require that the "other offense" referred to by U.S.S.G. § 2K2.1(c)(1)(A) have any connection with the crime of conviction, the Government's suggested reading of Application Note 14 would expose the defendant to sentence enhancement by the use of any unadjudicated firearm-related offense he may have committed in any country or locality, no matter how remote or disassociated from the crime of conviction it might be. Without a clearer expression by the drafters, we will not attribute to them an intent to bring about such a worldwide expansion of U.S.S.G. § 2K2.1(c)(1) enhancements by adding Application Note 14.

V.

Under the unusual circumstances of the present case, however, the district court could well have departed upwards to impose similar sentences. The sentencing statute authorizes a court to impose a sentence outside the range established by the applicable guideline, if the court finds "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). *See* U.S.S.G. § 5K2.0. In our opinion, this is an extraordinary illegal entry and illegal firearm importation case that, because Levario murdered a man in Mexico, took flight, shot at pursuing Mexican law officers with a deadly firearm, immediately prior to and for the purpose of bringing himself and his weapon illegally into the United States, "differs significantly from the 'heartland' cases covered by the guidelines in a way that is important to the statutory purposes of sentencing . . . ." U.S.S.G. § 5K2.0, comment. Moreover, in departing upward in the present case, the sentencing court reasonably could have looked to

7

analogous relevant conduct and offense guideline sections in determining the extent of the departure. Although Levario's Mexican offenses were not literally acts committed during the commission of the offenses of conviction, in preparation for them, or in the course of attempting to avoid detection or responsibility for those offenses under U.S.S.G. §1B1.3(a)(1), they closely resembled and were analogous to such acts. Even though his foreign offenses did not literally qualify as acts that were part of the same course of conduct as the offenses of conviction under U.S.S.G. §1B1.3(a)(2), because they were not offenses of a character for which U.S.S.G. §3D1.2(d) requires grouping of multiple counts, they were analogous to such acts and were "sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." U.S.S.G. § 1B1.3 n.9(B). Consequently, because of these aggravating circumstances not literally or adequately taken into consideration by the Sentencing Guidelines, which markedly distinguish Levario's conduct from the norm of illegal enterers and illegal firearm importers, we conclude that the sentencing court would have been justified in departing upward and applying U.S.S.G. §§ 2K2.1(c)(1)(A); 2X1.1; and 2A2.1 by analogy, rather than directly, to impose similar sentences.

## VI.

Finally, Levario contends that the district court erred in applying a three level increase pursuant to U.S.S.G. § 3A1.2(b), which provides that "[i]f . . . during the course of the offense or immediate flight therefrom, the defendant . . . knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury, increase by 3 levels." He argues that U.S.S.G. § 3A1.2(b) does not apply to foreign law enforcement officers because 18 U.S.C. § 232(7) defines "law

8

enforcement officer" as any officer or employee of the United States, the District of Columbia, or any state or political subdivision of a state that is enforcing state or federal law. Section 232(7), however, defines "law enforcement officer" only for purposes of Chapter 12 of Title 18, which deals exclusively with domestic civil disorders. Therefore, Levario has not presented a valid reason that U.S.S.G. § 3A1.2 cannot apply if the defendant committed an assault upon a person reasonably recognizable as a law enforcement officer, whether foreign or domestic, during the course of the offense of conviction.

We conclude, however, that the district court erred in applying the provision in the present case. Section 3A1.2 applies only to the defendant's conduct during the course of the offense of conviction or immediate flight therefrom. Levario's aggravated assaults upon the Mexican officers occurred prior to and not during the commission of his illegal entry and illegal firearms importation, the offenses of conviction, or in immediate flight therefrom. We concluded above that, because Levario's crimes of conviction were atypical due to their being part of a violent criminal spree, his Mexican offenses involved in that criminal episode could be considered by analogy in an upward departure. But it does not follow that the court would be justified in using Levario's acts in assaulting the Mexican officers by analogy again for the purpose of a U.S.S.G. § 3A1.2 enhancement. This would allow the Government to use the same acts twice to enhance Levario's sentences. The analogy between the assault of a law enforcement officer during the course of a domestic offense or immediate flight therefrom and the pre-offense assault of foreign officers in immediate flight from foreign crimes prior to the commission of a domestic offense is attenuated. It does not add any relevant or helpful information not already considered in the suggested upward departure to distinguish Levario's offenses of conviction from the norm of illegal entries and illegal importations

9

of firearms.

## VII.

We conclude that Levario's sentences were based on an incorrect interpretation and application of the Sentencing Guidelines. If a court of appeals determines that a sentence was imposed as the result of an incorrect application of the Sentencing Guidelines, the court is required to remand the case for further sentencing proceedings. 18 U.S.C. § 3742(f)(1).

> Section 3742(f)(1) does not call for a remand every time a sentencing court might misapply a provision of the Guidelines; rather, remand is required only if the sentence was "imposed as a result of an incorrect application" of the Guidelines. When a district court has not intended to depart from the Guidelines, a sentence is imposed "as a result of" an incorrect application of the Guidelines when the error results in the district court selecting a sentence from the wrong guideline range.

*Williams v. United States*, 503 U.S. 193, 202-03 (1992). That is what has happened in the present case. Although we have suggested that a departure from the Guidelines may be justified in this case, we cannot require the district court to do so. A district court's decision to depart from the Guidelines embodies the traditional exercise of discretion by a sentencing court. *Koon v. United States*, 518 U.S. 81, 98 (1996). Accordingly, we VACATE the sentences and REMAND the case for further sentencing proceedings consistent herewith, although we intimate no view as to the particular sentence to be imposed.