[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 17-14976

_____

D.C. Docket No. 6:17-cr-00062-CEM-DCI-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY CARL SPENCE,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(May 2, 2019)

Before ED CARNES, Chief Judge, MARTIN and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge:

This case presents an issue of first impression in this Circuit involving the

consideration by a sentencing judge of extraterritorial relevant conduct to enhance

an offense level under the Sentencing Guidelines.  Shortly after Anthony Carl

Spence arrived at the airport from Jamaica, agents discovered two videos of child pornography on his phone.  Spence told the agents that he received the cell phone about a month before in Jamaica.  He said that he received the first video from a girlfriend in New York and that he showed it to school children in Jamaica to encourage them to report if they had been molested.  Spence also told the agents that he sent out the videos to women with children while he was in Jamaica.

Spence was charged with knowing transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) and (b)(1) and knowing possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2).  He proceeded to trial where he was found guilty of both counts.  In calculating Spence's Guidelines range, the probation officer grouped Counts One and Two, pursuant to U.S.S.G. § 3D1.2(d), and determined that Count One provided the highest offense level.  Spence's base offense level was 22 pursuant to § 2G2.2(a)(2).  The probation officer increased Spence's offense level for a number of factors including by two levels, under § 2G2.2(b)(3)(F), because Spence distributed the material.  Spence's total adjusted offense level was 37 and because he had no criminal history, he had a criminal history category of I.  Based upon a total offense level of 37 and a criminal history category of I, Spence's Guideline imprisonment range was 210 months to 262 months.  The probation officer recommended a sentence of 151 months.

2

In the addendum to the Presentence Investigation Report ("PSI"), the probation officer noted, among other objections that do not bear on this appeal, that Spence objected to receiving a two-level enhancement for distribution. Spence stated that any distribution occurred while he was in Jamaica. The probation officer responded that Spence had admitted to the distribution and noted that there was no territorial limitation found in § 2G2.2.

The court adopted the Guidelines calculation found in the PSI and sentenced Spence to a total sentence of 68 months. The district court stated that it made a downward variance because of Spence's lack of sophistication and because there was no evidence that he was at a high risk of re-offending or of actually molesting children. The court stated that "the guidelines are entirely inappropriate based on this particular set of circumstances."

Spence raises a purely legal question regarding the Sentencing Guidelines, which we review *de novo*. United States v. Vail-Bailon, 868 F.3d 1293, 1296 (11th Cir. 2017) (en banc).

On appeal, Spence's sole argument is that his distribution of the videos while he was in Jamaica should not have affected his Guidelines calculation. He argues that by including his out-of-country conduct in the calculation of his offense level, the district court violated the principle that legislation of Congress should apply only within the United States unless a contrary intent appears. In other

words, Spence is relying upon the canon of statutory construction known as the presumption against the application of congressional statutes to conduct occurring in the territory of a foreign sovereign. See Kiobel v. Royal Dutch Petroleum Co., 569 U.S. 108, 115-16, 133 S. Ct. 1659, 1664 (2013). Spence argues that the doctrine should be extended so as to apply not only to preclude construction of statutes as intending to criminalize such extraterritorial conduct but also to apply to preclude sentencing courts from considering such extraterritorial conduct as part of the "relevant conduct" considered pursuant to U.S.S.G. § 1B1.3 in determining the appropriate sentence for conduct (occurring entirely within the United States) of which a defendant was convicted. Thus, Spence argues that his distribution of videos occurring solely in Jamaica should not have been considered by the district court. Spence does not challenge the fact of his distribution or that such distribution would constitute relevant conduct properly considered by the sentencing court (except for his extraterritorial argument).

Thus, the narrow issue in this appeal is whether the presumption against the extraterritorial application of congressional legislation should be extended to apply also to preclude a sentencing judge from considering extraterritorial conduct which would otherwise be properly considered as relevant conduct. This is an issue of first impression in the Eleventh Circuit.

The Seventh Circuit, the Tenth Circuit, and the Eighth Circuit have addressed this precise issue and have concluded that the presumption against the extraterritorial application of congressional legislation should not be extended to preclude a sentencing judge from considering such extraterritorial conduct.

United States v. Dawn, 129 F.3d 878 (7th Cir. 1997), is the leading case. There, the defendant was charged with receiving and possessing child pornography. Dawn had taken the film to be developed in his hometown in Wisconsin. The film processor noticed what he suspected to be child pornography and notified the police. The developed film was delivered to Dawn at his home by an undercover officer, and after Dawn received and signed for it, he was arrested. Dawn had produced the film while in Honduras. At sentencing, the district court applied the Guidelines provision for production because of the cross-reference from the possession and receiving counts.[1] The Seventh Circuit noted that the term "offense" is defined broadly to include not only the offense of conviction but also all conduct deemed relevant by U.S.S.G. § 1B1.3 (that is, all relevant conduct). No one disputed that the production in Dawn was relevant conduct. Id. at 881. The Dawn court relied on the fact that none of the relevant Guidelines provisions turn on whether the conduct occurred in the United States. Id. at 882. Instead, the

---

[1]    The court applied several provisions, including U.S.S.G. § 2G2.4. That section has since been deleted and consolidated with § 2G2.2, effective November 1, 2004. Thus the analysis in Dawn is still pertinent to our discussion.

5

court said, the focus of these provisions is on "the factual and logical relationship between the offense of conviction and the defendant's other acts," and none of the relevant Guidelines provisions bars the use of extraterritorial conduct. Id. The defendant had argued the general principle known as the presumption against the extraterritorial application of congressional legislation—i.e., that statutes apply only domestically unless Congress explicitly made clear that they applied extraterritorially—barred use of the conduct. The Seventh Circuit rejected this argument because Dawn was not convicted or sentenced for producing the films; instead, the production activity was relevant conduct, which is properly considered by the sentencing court in determining the appropriate sentence for the offense— receiving and possessing child pornography—of which Dawn was convicted. The court held that Dawn's production of the films was appropriately considered because "it sheds light on the gravity of his conduct as a receiver and possessor of the films." Id. at 884-85. "[C]ommon sense . . . [indicates] that a receiver or possessor who has manufactured the pornography in his possession is both more culpable and more dangerous than one who has received or possessed the pornography and no more." Id. at 884.

The Eighth and Tenth Circuits have followed Dawn. In United States v. Wilkinson, 169 F.3d 1236 (10th Cir. 1999), the Tenth Circuit applied the same cross-reference to the Guidelines provision for production of child pornography

6

because Wilkinson had produced in Thailand the child pornography of which he was convicted of possessing. Following <u>Dawn</u>'s rationale, the Tenth Circuit noted that the production was relevant conduct under U.S.S.G. § 1B1.3, that none of the Guidelines provisions at issue carve out an exception for conduct occurring outside the United States, and that the higher production offense level was imposed—not because he was being punished for the production—but rather because of the common sense notion that a possessor of child pornography who had manufactured the pornography was more culpable than one who had merely possessed same. <u>Id.</u> at 1238. Further, the Tenth Circuit pointed to 18 U.S.C. § 3661, which provides:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

<u>Id.</u> at 1238-39. Addressing facts similar to those in <u>Dawn</u> and <u>Wilkinson</u>, the Eighth Circuit held that extraterritorial relevant conduct could be considered by the sentencing judge. <u>United States v. Zayas</u>, 758 F.3d 986 (8th Cir. 2014).[2] The <u>Zayas</u> court followed <u>Dawn</u> with little elaboration.

We agree with the holding and reasoning of the Seventh Circuit decision in <u>Dawn</u> and the Tenth Circuit decision in <u>Wilkinson</u> that the presumption against the

---

[2]     We note that the Third Circuit, in the unpublished opinion, <u>United States v. Castro-Valenzuela</u>, 304 F.App'x 986 (3d Cir. 2008), also followed the holding and reasoning of the Seventh Circuit <u>Dawn</u> decision.

extraterritorial application of congressional legislation does not apply in the sentencing context of a court's consideration of relevant conduct that occurred outside the United States.[3]

First, the conduct underlying the offense for which Spence was convicted and for which he was sentenced occurred in the United States—i.e., his transportation and possession of child pornography. He was not convicted on the basis of conduct that occurred outside the United States, nor was he sentenced for such conduct. That relevant conduct which occurred outside the United States was considered in assessing the gravity of Spence's domestic crime does not mean that he was sentenced for that extraterritorial conduct. The Tenth Circuit in Wilkinson so held, and we agree:

> Consideration of information about the defendant's character and conduct at sentencing does not result in "punishment" for any offense other than the one for which the defendant was convicted. Rather, the defendant is punished only for the fact that the present offense was carried out in a manner that warrants increased punishment.

Wilkinson, 169 F.3d at 1238 (emphasis in original) (alteration and quotation marks omitted) (quoting United States v. Watts, 519 U.S. 148, 155, 117 S. Ct. 633 (1997) (per curiam)).

---

[3]    As noted above, the Eighth Circuit in Zayas has also so held.

Second, there is no language in the relevant Guidelines provisions which limits consideration of relevant conduct to conduct occurring in the United States.[4]

Third, confirming the proposition that there is no such geographical limit on relevant conduct that a sentencing court may properly consider, 18 U.S.C. § 3661 expressly provides:

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence.

18 U.S.C. § 3661.  Indeed, even conduct for which a defendant has been acquitted may be considered for sentencing.  United States v. Watts, 519 U.S. at 152, 117 S. Ct. at 635.

We acknowledge that the Second Circuit decisions in United States v. Azeem, 946 F.2d 13 (2d Cir. 1991), and United States v. Chunza-Plazas, 45 F.3d

---

[4]    Those provisions read, in pertinent part:

(a) Base Offense Level:
(1) 18, if the defendant is convicted of 18 U.S.C. § 1466A(b), § 2252(a)(4), § 2252A(a)(5), or § 2252A(a)(7).
(2) 22, otherwise.
 (b) Specific Offense Characteristics
. . .
 (3) (Apply the greatest):
. . .
(F) If the defendant knowingly engaged in distribution, other than distribution described in subdivisions (A) through (E), increase by 2 levels. . .

U.S.S.G. § 2G2.2.  Further, the provisions governing the admission of relevant conduct, found in U.S.S.G. § 1B1.3, contain nothing that would limit the conduct to that which occurred in the United States.

51 (2d Cir. 1995), could be viewed as being in some tension with our holding and those of the Seventh, Eighth, and Tenth Circuits. In Azeem, the defendant conspired with a DEA informant in Pakistan to import heroin both to New York and also to Cairo. Azeem was charged only with the former. The Second Circuit held that the drugs in the Cairo transaction should not have been included in the total amount of drugs for purposes of determining the base offense level. Although the court acknowledged that the Cairo transaction was part of the same course of conduct or common scheme—i.e., the court acknowledged that the Cairo transaction was relevant conduct—and also acknowledged that the relevant conduct provision did not address the issue of foreign crimes and activities, 946 F.2d at 17, it held that the district court erred in considering the extraterritorial conduct. The Second Circuit did not mention the doctrine known as the presumption against the extraterritorial application of congressional legislation. Rather, it relied on the fact that the Cairo transaction was not a crime against the United States, and on the fact that a different Guidelines provision provides that foreign convictions are not counted as part of a defendant's criminal history. See U.S.S.G. § 4A1.2(h) ("Sentences resulting from foreign convictions are not counted, but may be considered under § 4A1.3 (Departures Based on Inadequacy of Criminal History Category (Policy Statement))."). The Second Circuit inferred from this that Congress (really the Sentencing Commission) had "chosen to assign

10

to foreign crimes a rather limited role." Azeem, 946 F.2d at 17.  The court noted what seemed to it as good reasons for excluding foreign crimes—e.g., not involving courts in "distinguishing between activities that violate both domestic and foreign law and those which violate only domestic law or only foreign law." Id.  The Chunza-Plazas decision followed the Azeem rationale with little additional elaboration, as did the Ninth Circuit in United States v. Chao Fan Xu, 706 F.3d 965, 992-93 (9th Cir. 2013).

We note that the Second Circuit cases do not address the doctrine of the presumption against the extraterritorial application of congressional legislation, although we acknowledge that they do address related concerns.  To the extent that the Second Circuit cases are inconsistent with our holding and that of the Seventh Circuit in Dawn, the Tenth Circuit in Wilkinson, and the Eighth Circuit in Zayas, we respectfully decline to follow the Second Circuit.  We believe that reliance upon U.S.S.G. § 4A1.2(h) in Spence's case would be misplaced.  That Guidelines provision provides only that foreign convictions and sentences should not be counted in a defendant's criminal history.  A court required to consider a foreign conviction as part of a defendant's criminal history might well find itself inquiring about whether the conduct underlying the foreign crime would violate domestic United States law, or whether criminalization of that underlying conduct would violate the public policy of the United States, or whether counting such foreign

11

conviction would otherwise be inappropriate. Such are the concerns proffered by the Azeem panel. However, such concerns are simply not relevant in the circumstances of Spence's case. We are not concerned with a foreign conviction; rather, we are concerned only with conduct—i.e., the distribution of particular videos which have already been determined to be child pornography and have already been determined to be in violation of United States law. We need not examine any foreign law to know that it is appropriate to consider such distribution as indicating that Spence's crime of possessing the videos in the United States is more culpable than mere possession alone would have been. United States Sentencing Guideline § 2G2.2(b)(3)(F) tells us this. For this reason, we do not consider the rationale of Azeem to be persuasive in the circumstances of the instant case. Indeed, we note that U.S.S.G. § 4A1.2(h), although it provides that foreign convictions not be counted as part of a defendant's criminal history, expressly provides that foreign convictions and sentences can be considered under the upward departure provision. That, we submit, is inconsistent with Spence's position that the presumption against extraterritorial application of congressional legislation should be extended so as to preclude a sentencing judge from considering extraterritorial conduct in the sentencing process.

For the foregoing reasons, we reject Spence's sole argument on appeal. We decline to extend the doctrine of the presumption against extraterritorial

application of congressional legislation to also preclude a sentencing judge from considering extraterritorial conduct which otherwise is properly considered as relevant conduct.

AFFIRMED.