72 F.3d 130
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Clifford R. PITTS, Defendant-Appellant.
 No. 94-2394.
 United States Court of Appeals, Sixth Circuit.
 Dec. 8, 1995.
 
 Before: KEITH, DAUGHTREY and PHILLIPS*, Circuit Judges.
 PER CURIAM:
 
 
 1
 The Defendant-Appellant, Clifford R. Pitts ("Pitts"), appeals the sentence he received after pleading guilty to possession of stolen mail in the form of a check, in violation of 18 U.S.C. Sec. 1708. Pitts argues the district court erred by imposing a sentence outside the range recommended by the United States Sentencing Guidelines and by increasing his offense level for more than minimal planning. For the reasons stated below, we AFFIRM his sentence.
 
 I. Statement of the Case
 
 2
 On September 16, 1991, Brandon Crofoot ("Crofoot") and Daniel Lamer ("Lamer") stole an envelope from an outdoor mailbox at the Wyoming, Michigan Post Office. The envelope contained a check in the amount of $3,045.59 from American Box Board Company Employees Credit Union to Travelers Express Company. Crofoot and Lamer removed the check from the envelope and gave it to Pitts, Crofoot's uncle.
 
 
 3
 Pitts then solicited Wanda Bethea ("Bethea") to assist in cashing the check. Pitts was able to alter the check so that Bethea was named as the designated payee. Bethea, Pitts, Crofoot and Lamer, took the check to the Old Kent Bank ("Old Kent") in Wyoming, Michigan. Bethea's first attempt to cash the check failed because she lacked proper identification. Bethea, with Pitts' assistance, was then able to obtain the proper identification from the Secretary of State's office. The group returned to Old Kent where Bethea entered the bank in the company of Crofoot and Lamer. This time Bethea was successful in cashing the check. She established a savings account in the amount of $1,000 and took what was left over from the check in cash. The cash was then divided among the group, with Pitts and Bethea each receiving $500 and Crofoot and Lamer equally dividing the remainder. During the final two weeks of September, 1991, Crofoot and Bethea returned to Old Kent and withdrew the $1,000 from the savings account.
 
 
 4
 An investigation by the postal service resulted in the discovery of 22 latent fingerprints on the check, all of which matched Pitts' fingerprints. In addition, a number of incriminating statements by Bethea and Crofoot implicated Pitts. Pitts was indicted on July 16, 1994. The indictment charged Pitts and Bethea with one count of unlawful possession of stolen mail in violation of 18 U.S.C. Sec. 1708. Pitts entered a guilty plea.
 
 
 5
 The statutory maximum sentence under 18 U.S.C. Sec. 1708 is five years. Pitts' presentence report established his offense level at seven. This number reflected a two point reduction for Pitts' acceptance of responsibility and a two point increase in the offense level for more than minimal planning pursuant to Guideline Sec. 2B1.1(b)(5)(A). Because Pitts' criminal record reflected 22 prior convictions, he accumulated a total of 41 criminal history points, thus placing him in the highest criminal history category of VI. Pitts' presentence report recommended a sentence of between 15 and 21 months. However, Pitts' probation officer recommended to the district court that it make an upward departure from the sentence range recommended by the Federal Sentencing Guidelines. The presentence report stated "[Mr. Pitts'] extensive Larceny record suggests, in all likelihood, that he will continue to commit other theft and law violations." Pitts objected to both the two point increase in his offense level for more than minimal planning and to the recommendation by the probation officer that the district court depart upward from Pitts' Guideline sentence range.
 
 
 6
 The district court agreed with the probation officer's recommendation and increased Pitts' offense level two points, resulting in a sentencing range of 18-24 months. The district court sentenced Pitts to spend 24 months in prison, followed by three years of supervised release and to pay $762 in restitution. The district court determined the upward departure was warranted because of Pitts' lengthy criminal record and the lack of respect he had shown for the law.
 
 
 7
 Pitts filed a timely notice of appeal.
 
 II. Discussion
 
 8
 On appeal, Pitts contends the district court erred by increasing his offense level by two points for more than minimal planning, pursuant to Guideline Sec. 2B1.1(b)(5)(A). Pitts also claims the district court erred when it departed upward from his Guideline range because of his long criminal history.
 
 A. More than Minimal Planning
 
 9
 The district court increased Pitts' offense level two levels after concluding that his actions after he came into possession of the stolen mail[1] were relevant and constituted more than minimal planning. On appeal, Pitts argues that because any planning on his part took place after he came into possession of the stolen check, such planning cannot be considered relevant conduct for the purpose of calculating his sentence. The government contends that Pitts' role in cashing the stolen check was part of the same course of conduct as his illegal possession of the check and therefore this conduct was properly considered in calculating his sentence. A district court's factual findings in relation to the application of the Sentencing Guidelines are subject to review for clear error. See 18 U.S.C. Sec. 3742; United States v. Garner, 940 F.2d 172, 174 (6th Cir.1991). However, the legal conclusions of the district court regarding the application of the Guidelines are afforded de novo review. United States v. Thomas, 24 F.3d 829, 832 (6th Cir.), cert. denied, 115 S.Ct. 453 (1994).
 
 
 10
 The first step, for a district court, in calculating the Guideline range for a defendant is to determine which section of the Sentencing Guidelines governs the offense of conviction. U.S.S.G. Sec. 1B1.2(a) (Nov. 1, 1994). The next step is to determine the relevant conduct that can be taken into account during sentencing. U.S.S.G. Sec. 1B1.2(b). In this case, the offense of conviction, possessing stolen mail, is categorized as a larceny offense and is therefore governed by Sec. 2B1.1 of the Guidelines. Pursuant to this section, the district court can impose a two level increase in a defendant's offense level if the crime involved more than minimal planning on the part of the defendant. However, a district court can only impose a more than minimal planning increase if the planning of the crime was relevant conduct as defined by the subsections of Guideline Sec. 1B1.3(a).
 
 
 11
 The inquiry into whether Pitts' sentence enhancement for more than minimal planning was erroneous is thus two-fold. First, the court must determine if the planning was relevant and second, the court must decide whether the planning was more than minimal.
 
 
 12
 Subsection 1B1.3(a)(2) of the Guidelines provides that with respect to offenses for which Sec. 3D1.2(d) would require grouping of multiple counts, relevant conduct shall include "all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction."[2] Guideline Sec. 2B1.1, the provision covering Pitts' larceny conviction, falls under Sec. 3D1.2(d) and is therefore governed by Sec. 1B1.3(a)(2). U.S.S.G. Secs. 3D1.2(d) and 1B1.3(a)(2). As a result, the district court can properly consider all acts or omissions of Pitts that were part of the same course of conduct or a part of a common scheme or plan as his possession of stolen mail conviction.
 
 
 13
 After taking possession of the stolen check, Pitts altered the name of the payee on the check, solicited an accomplice to cash the check, took the accomplice to a place where the check could be cashed, and made withdrawals from the check proceeds. These actions involved the same check that Pitts was convicted of illegally possessing and were reasonably foreseeable acts in light of Pitts' possession of the stolen mail. In addition, these acts all took place within two weeks after Pitts illegally came into possession of the check. Thus, Pitts' conduct after possessing the stolen check was significantly related to the offense of conviction so as to warrant the conclusion that it was a part of the same course of conduct.
 
 
 14
 In addition, it is clear that Pitts' actions after possessing the stolen check demonstrated more than minimal planning on his part. "More than minimal planning" is defined as "more planning than what is typical for commission of the offense in a simple form." U.S.S.G. Sec. 1B1.1 comment. (n. 1(f)). More than minimal planning is also present "if significant affirmative steps were taken to conceal the offense." Id. As mentioned above, Pitts committed numerous acts to insure his accomplice, whom he solicited to take part in the crime, would be able to successfully cash the check and thus defraud the check's issuer. Such actions evidence deliberate and extensive planning by Pitts. As a result, the district court did not err in increasing Pitts' offense level for more than minimal planning.
 
 B. Upward Departure
 
 15
 A district court is entitled to upwardly depart from a defendant's recommended Guideline range if it determines that the recommended sentence does not adequately reflect the seriousness of the defendant's criminal history. U.S.S.G. Sec. 4A1.3; United States v. Thomas, 24 F.3d at 832. When reviewing whether the district court's decision to depart from a Guideline recommended sentence is warranted, this Court applies the following three-prong test:
 
 
 16
 First, we review de novo the circumstances surrounding the departure to determine whether they are sufficiently unusual to warrant divergence from the guidelines. Second, we evaluate whether the circumstances upon which the district court based the departure actually exist in the case. In reviewing the trial court's factfinding, we reverse only for clear error. Third, once we have assured ourselves that the circumstances are proper for departure and that those circumstances enjoy support in the record, we assess the degree or range of departure for reasonableness.
 
 
 17
 Thomas, 24 F.3d at 832.
 
 
 18
 We find the district court did not err in making an upward departure from Pitts' recommended Guideline sentence. The first prong of the three part analysis is satisfied by Pitts' unusually long criminal history which by itself provides the district court with sufficient reason to upwardly depart. See United States v. Belanger, 892 F.2d 473, 475 (6th Cir.1989) (ruling that a defendant's 29 point criminal history was a sufficient basis for an upward departure). In addition, the fact that Pitts' criminal record is extremely long indicates an unchecked tendency towards recidivism--another factor in support of upward departure. See Thomas, 24 F.3d at 833 (ruling that both a high criminal history and a high likelihood of recidivism are valid reasons for upward departure).
 
 
 19
 The second prong of the test--that the circumstances justifying departure actually exist--is also met. The district court's findings are amply supported by the record and therefore are not clearly erroneous.
 
 
 20
 Finally, the last consideration--that the degree of departure is reasonable--is also satisfied. In assessing reasonableness, we give great deference to the trial court and will not disturb its decision unless there is little or no basis for departure. See Belanger, 892 F.2d at 476. As mentioned above, Pitts' long history of criminal activity indicates a strong likelihood of recidivism. In light of this fact, the additional three month sentence imposed on account of the district court's upward departure does not seem unreasonable.
 
 III. Conclusion
 
 21
 For the reasons stated above, we AFFIRM the sentence imposed by the Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan.
 
 
 
 *
 The Honorable J. Dickson Phillips, Jr., Circuit Judge from the United States Court of Appeals for the Fourth Circuit
 
 
 [1]
 Because the crime committed in the instant case involved the stealing of mail that was in the form of a bank check, "stolen mail" and "stolen check" will be used interchangeably throughout this opinion to describe the mail that was possessed by Pitts
 
 
 [2]
 Guideline Sec. 1B1.3 subdivisions (1)(A) and (1)(B) provide:
 (1)(A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and
 (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity....