*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0501p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 05-4572

WALTER M. MAKEN,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Southern District of Ohio at Dayton.
No. 00-00019—Walter H. Rice, District Judge.

Argued: November 30, 2007

Decided and Filed: December 26, 2007

Before: SILER, GIBBONS, and McKEAGUE, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Gary W. Crim, Dayton, Ohio, for Appellant. Elissa R. Hart, DEPARTMENT OF JUSTICE, TAX DIVISION, Washington, D.C., for Appellee. **ON BRIEF:** Gary W. Crim, Dayton, Ohio, for Appellant. Elissa R. Hart, Alan Hechtkopf, DEPARTMENT OF JUSTICE, TAX DIVISION, Washington, D.C., for Appellee.

_____

## OPINION

_____

JULIA SMITH GIBBONS, Circuit Judge. Defendant-appellant Walter M. Maken appeals his sentence for income tax evasion and willfully failing to file a federal income tax return. Maken contends that the district court erred in considering state tax losses in its calculation of his sentence and that the sentence imposed by the district court violated the Sixth Amendment. For the following reasons, we affirm the judgment of the district court.

I.

Walter M. Maken has failed to file federal and state income tax returns since 1993. From 1967 to April 1994, Maken worked for the Joyce-Dayton Corporation, and, since April 1994, Maken has performed part-time work as a freelance photographer. In 1993 and 1994, Maken's income exceeded the base amount triggering the federal income tax filing requirement. However, during the 1993 and 1994 tax years, Maken failed to report income received from his wages, pension, and IRA distributions, as well as income from his self-employment as a photographer. Additionally,

during the 1993 and 1994 tax years, Maken submitted W-4 forms to the Joyce-Dayton Corporation on which he claimed that he was exempt from income taxation, thus preventing the withholding of income taxes from his salary. Maken signed these W-4 forms under penalty of perjury.

From 1997 through 2002, Maken received income from three additional businesses—White Allen, Citizen Motor Car, and Car Shuttle Agency—in addition to his photography income. Again, Maken's income during these years triggered the income tax filing requirement, but Maken nonetheless failed to pay federal, as well as state, income taxes. Additionally, Maken ceased filing state sales tax returns after 1995.

Maken, who began associating with tax protester organizations in 1993, testified at trial regarding his belief that he did not have to pay taxes or file income tax returns. On April 23, 2004, a jury convicted Maken of willful failure to file an income tax return, in violation of 26 U.S.C. § 7203, and tax evasion, in violation of 26 U.S.C. § 7201. The conduct for which Maken was convicted occurred during the 1993 and 1994 tax years.

Maken's Presentence Investigation Report ("PSR") calculated a recommended Guidelines range of 15 to 21 months imprisonment. The PSR cited U.S.S.G. § 2T1.1 as the applicable Guidelines provision for violations of 26 U.S.C. § 7203 and 26 U.S.C. § 7201. Using the 1994 edition of the Sentencing Guidelines, the PSR placed Maken's base offense level at 12, as Maken had caused a total tax loss of $35,877 to the federal government. This tax loss figure included federal tax losses for the tax years 1993 through 2003, excluding 1996. The PSR explained that although Maken was convicted for conduct occurring in 1993 and 1994, tax losses for the years 1995 and 1997 through 2003 should be included in the calculation of the sentence because Maken's conduct during these years constituted "relevant conduct" under U.S.S.G. § 1B1.3(a)(2). The PSR also recommended a two-level increase for obstruction of justice pursuant to U.S.S.G. § 3C1.1.

At Maken's sentencing hearing, the government called Stephen Rowe, an Internal Revenue Service agent, who testified regarding the government's calculation of the tax losses caused by Maken. Rowe calculated federal tax losses of $38,445 for the years 1993 through 2004, excluding 1996.[1] Additionally, Rowe determined that Maken had caused $2,539 in state income tax losses and $1,493 in state sales tax losses. Thus, Rowe calculated a total tax loss of $42,477.

The government objected to, *inter alia*, the PSR's failure to include state tax losses in its calculation of Maken's Guidelines range.[2] Under the 1994 Sentencing Guidelines, a $38,445 tax loss resulted in a base offense level of 12, whereas a $42,477 tax loss resulted in a base offense level of 13. U.S.S.G. § 2T1.4 (1994). The district court sustained the objection, noting that the inclusion of state tax losses in a sentencing calculation for federal tax crimes is an "open issue in the Sixth Circuit" but that other circuits have concluded that state losses can be taken into consideration. As a result, Maken's total offense level was 15—the district court added a two-level enhancement for obstruction of justice—resulting in a Guidelines range of 18 to 24 months. Following an examination of the factors enumerated in 18 U.S.C. § 3553(a), the district court sentenced Maken to 30 months imprisonment. Specifically, the district court imposed a 12-month sentence for

---

[1] Rowe did not include the 1996 tax year in his computation of the total tax loss because he had no records for this year on which he could base a tax loss calculation.

[2] The sentencing hearing transcript incorrectly states that the defendant, rather the government, lodged the objection.

Maken's violation of 26 U.S.C. § 7203 and a concurrent 30-month sentence for Maken's violation of 26 U.S.C. § 7201.  Maken filed a timely notice of appeal on November 3, 2005.[3]

## II.

Maken contends that the district court erred in its calculation of the proper Sentencing Guidelines range for his offense.  Specifically, Maken argues that the state income and sales tax losses he caused were not "relevant conduct" under U.S.S.G. § 1B1.3.  This court reviews a district court's findings of fact at sentencing for clear error and its legal conclusions regarding the Sentencing Guidelines *de novo*.  *United States v. Baggett*, 342 F.3d 536, 539 (6th Cir. 2003).  "Because the district court's determination that the activity in this case constitutes 'relevant conduct' under the Sentencing Guidelines involves the application of law to fact, we review the district court's determination *de novo*."  *United States v. Shafer*, 199 F.3d 826, 830 (6th Cir. 1999).

Pursuant to U.S.S.G. § 2T1.1, the applicable Guidelines provision for tax evasion and willful failure to file a tax return, a defendant's base offense level is determined by the tax loss table found in U.S.S.G. § 2T1.4.  U.S.S.G. § 2T1.1(a)(1) (1994).[4]  As noted above, the inclusion of state tax losses in Maken's Guidelines calculation results in a base offense level of 13.  *See* U.S.S.G. § 2T1.4.  When state tax losses are not taken into account, Maken's base offense level is 12.  *Id.*  The commentary to § 2T1.1 notes that "[i]n determining the total tax loss attributable to the offense (*see* 1B1.3(a)(2)), all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan unless the evidence demonstrates that the conduct is clearly unrelated."  U.S.S.G. § 2T1.1 cmt. n.2.  The commentary provides a number of examples illustrating conduct that is "part of the same course of conduct or common scheme or plan," such as  "a continuing pattern of violations of the tax laws by the defendant."  *Id.*

Under U.S.S.G. § 1B1.3, where the applicable Guidelines provision specifies more than one base offense level, the base offense level is determined on the basis of "all acts and omissions [committed by the defendant] that were part of the same course of conduct or common scheme or plan as the offense of conviction."  U.S.S.G. § 1B1.3(a)(2).[5]  The commentary to § 1B1.3 defines "common scheme or plan": "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*."  U.S.S.G. § 1B1.3 cmt. n.9.  Additionally, the commentary explains that "[o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they

---

[3]While neither party has briefed this issue, we note that Maken was released from prison on November 21, 2007.  However, this does not render his appeal moot, as Maken is still subject to three years of supervised release.  Even when an appellant has been released from custody, his case is not moot so long as the appeal "potentially implicates" the length of the appellant's supervised release term. *United States v. Nissenbaum*, 75 F. App'x 412, 413 n.2 (6th Cir. 2003); *see also United States v. Lewis*, 166 F. App'x 193, 194 (6th Cir. 2006). Pursuant to the now-advisory Guidelines, Maken's offense under 26 U.S.C. § 7201 was subject to "at least two years but not more than three years" of supervised release.  U.S.S.G. § 5D1.2.  Upon a theoretical remand, the district court would have discretion, particularly in light of *United States v. Booker*, 543 U.S. 220 (2005), to impose a shorter supervised release term. *See United States v. Turner*, 217 F. App'x 799, 800 n.1 (10th Cir. 2007) (noting that a district court has "wide discretion, particularly post-*Booker*" over the supervised release component of a sentence and holding defendant's appeal of his sentence was not moot despite his release from prison); *see also United States v. Katuramu*, 174 F. App'x 272, 280 (6th Cir. 2006) (explaining that sentences of supervised release are governed by *Booker*).

[4]All Guidelines citations hereinafter refer to the 1994 Sentencing Guidelines Manual.

[5]U.S.S.G. § 1B1.3(a)(2) applies only to "offenses of a character for which 3D1.2(d) would require grouping of multiple counts."  U.S.S.G. § 1B1.3(a)(2).  Offenses covered by § 2T1.1 fall into this category.  *See* U.S.S.G. § 3D1.2(d).

are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." *Id.* Factors appropriate for the court to consider in determining whether offenses constitute the "same course of conduct" include "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Id.*

As an initial matter, this court has held that state offenses may qualify as "relevant conduct" under U.S.S.G. § 1B1.3(a)(2). *See United States v. McDaniel*, 398 F.3d 540, 553 (6th Cir. 2005) (holding losses included in state-court conviction for fraudulent conduct qualified as relevant conduct for purposes of determining the amount of loss for federal sentencing, where *modus operandi*, victims, and time period in state and federal offenses were the same); *United States v. Bandy*, 172 F.3d 49, 1999 WL 17646, at *3 (6th Cir. Jan. 4, 1999) (table) (upholding sentence enhanced on the basis of state offenses because "relevant conduct under U.S.S.G. § 1B1.3(a) is not limited to conduct which constitutes a federal offense"); *see also United States v. Hough*, 276 F.3d 884, 898 (6th Cir. 2002) (holding that juvenile behavior constituted "relevant conduct" because, in the context of § 1B1.3, "a federal district court may consider any relevant conduct when sentencing a defendant, whether or not the conduct is a federal crime") (quoting *United States v. Martin*, 157 F.3d 46, 51 (2d Cir. 1998)). Additionally, relevant conduct is not limited to conduct for which the defendant has been convicted. *See United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994) (holding that relevant conduct may include conduct that cannot lead to a criminal conviction because it is barred by a statute of limitations). *But see Shafer*, 199 F.3d at 830-31 (holding conduct that can never lead to criminal conviction cannot constitute relevant conduct).

As the district court noted, other circuits have held that state tax offenses may constitute "relevant conduct" for purposes of sentencing. In *United States v. Powell*, 124 F.3d 655, 656 (5th Cir. 1997), a defendant appealed his sentence for evasion of federal fuel excise taxes. The Fifth Circuit upheld the inclusion of state tax losses as "relevant conduct" for purposes of the calculation of the defendant's base offense level under U.S.S.G. § 2T1.1. *Id.* at 666. Finding that the conduct constituted a "common scheme or plan" or the "same course of conduct," the court noted that the "evasion of state and federal taxes involved the same *modus operandi*: using a tax certificate to buy fuel at a reduced rate, filing false tax returns, using false customer invoices, and supplying false information to taxing authorities." *Id.* at 665. Morever, the court noted that the "temporal proximity, similarity, and regularity" of the federal and state offenses further indicated that the state tax offenses constituted "relevant conduct." *Id.* at 666 (citing U.S.S.G. § 1B1.3 cmt. n.9). Both the Fourth and the Second Circuits have reached similar conclusions. *See United States v. Baucom*, 486 F.3d 822, 829 (4th Cir. 2007) (holding that failure to file state tax returns was part of the same course of conduct for which defendants were convicted); *United States v. Fitzgerald*, 232 F.3d 315, 318 (2d Cir. 2000) (affirming inclusion of state and city tax evasion in total tax loss calculation).

Maken's argument that state tax losses can never qualify as "relevant conduct" under U.S.S.G. § 1B1.3(a)(2) is without merit. At the outset, we note that Maken's citation to *United States v. Azeem*, 946 F.2d 13 (2d Cir. 1991), is inapposite. In *Azeem*, the Second Circuit determined that crimes conducted abroad do not qualify as "relevant conduct." *Id.* at 17. However, the *Azeem* court relied in part on Congressional intent as expressed in U.S.S.G. § 4A1.2(h), which bars the use of foreign sentences in the calculation of a defendant's criminal history category. *Id.*; *see also Bandy*, 1999 WL 17646, at *3 (rejecting *Azeem* as inapposite in determining that state offenses qualify as relevant conduct). Additionally, Maken's apparent argument that Congress must explicitly state that state offenses can be included in the calculation of an offense level, as it did in

U.S.S.G. § 2K2.1 and U.S.S.G. § 2A4.1,[6] does not withstand scrutiny. As noted above, this court has held that relevant conduct for purposes of § 1B1.3 is not limited to federal conduct. *See Bandy*, 1999 WL 17646, at *2 (adopting view of other circuits that the Sentencing Commission did not intend to narrow § 1B1.3 to federal conduct only); *see also McDaniel*, 398 F.3d at 553.

In the instant case, Maken's state tax offenses and his federal tax offenses may be categorized both as a "common scheme or plan" and the same "course of conduct." *See* U.S.S.G. § 1B1.3(a)(2). Maken's failure to file both federal and state tax returns constituted the same *modus operandi*: as a fervent tax protestor, Maken's "method of pressing his challenges," the district court noted during sentencing, "is to not file and not pay taxes." Likewise, the "temporal proximity, similarity, and regularity" of Maken's federal and state tax offenses indicate that these offenses constitute the same "course of conduct." *See Powell*, 124 F.3d at 666; U.S.S.G. § 1B1.3 cmt. n.9 (noting that "a defendant's failure to file tax returns in three consecutive years appropriately would be considered as part of the same course of conduct because such returns are only required at yearly intervals"). Maken committed his first state income tax offense in the same year as his first federal income tax offense, and Maken has continuously failed to file federal and state tax returns for over a decade, even after he was indicted by a federal jury in 2000. Thus, we find that the district court did not err in its determination that the state tax losses caused by Maken constituted "relevant conduct" for purposes of sentencing.

This court's recent decision in *United States v. Harris*, 200 F. App'x 472 (6th Cir. 2006), does not mandate a different result. In *Harris*, this court faced precisely the same question that is presently before the panel. 200 F. App'x at 496-97. Defendant Harris, who was convicted of conspiracy to defraud the IRS and three counts of tax evasion, contended that the district court erred by including unpaid state, local, and FICA taxes in its tax loss calculation; specifically, Harris argued that "relevant conduct" could not include: "(1) losses from the violation of non-federal tax law, and (2) losses from conduct not shown to have been criminal (nonpayment of state and local taxes)." *Id.* at 496. The court did not reach the first issue—which we decide today—and concluded that the latter argument prevailed. *Id.* at 496-97.

Citing to *United States v. Shafer*, 199 F.3d 826, 831 (6th Cir.1999), the *Harris* court noted that "[t]his court has held that 'a district court may not include conduct in its sentencing calculation pursuant to § 1B1.3(a)(2) unless the conduct at issue amounts to an offense for which a criminal defendant could potentially be incarcerated.'" *Id.* at 497. In *Shafer*, the relevant conduct at issue was the defendant's failure to pay his workers overtime wages in violation of the Fair Labor Standards Act, which explicitly barred imprisonment for first-time offenders of the statute. *See Shafer*, 199 F.3d at 831. Because the defendant could not have received any prison time had he been criminally prosecuted for the FLSA violations, the court concluded that the FLSA violations could not be included in the district court's sentencing calculation. *Id.* Relying on this precedent, the *Harris* court noted that "the district court made no finding as to whether Harris's nonpayment of state, local, and FICA taxes 'amounts to an offense for which a criminal defendant could potentially be incarcerated,'" and the court accordingly concluded that the district court erred in its inclusion of those tax losses as relevant conduct. *Harris*, 200 F. App'x at 497 (citing *Shafer*, 199 F.3d at 831). The *Harris* court remanded for resentencing in light of *United States v. Booker*, 543 U.S. 220 (2005), and instructed the district court to determine on remand whether Harris's nonpayment of state, local, and FICA taxes amounted to an offense for which he could be incarcerated. *Harris*, 200 F. App'x at 497, 499.

---

[6]The § 2K2.1 application notes and § 2A4.1 background both provide for enhancements for state offenses. *See* U.S.S.G. § 2K2.1 cmt. n.1; U.S.S.G. § 2A4.1 cmt. background.

In contrast to *Harris*, it is apparent that Maken's failure to file Ohio state income and sales taxes constitutes an offense that could result in incarceration.  *See* Ohio Rev. Code Ann. §§ 5747.19, 5747.99(A), 2929.14(A)(5), 5739.30(A), 5739.99(B).[7]  Although the district court did not make a specific finding as to whether Maken's nonpayment of state income and sales taxes constituted an offense for which he could potentially be incarcerated, the government, in its objection to the PSR, noted the relevant Ohio statutes that Maken violated by failing to file state income and sales tax returns.  Moreover, Maken does not dispute the government's assertion that he did, in fact, fail to pay Ohio state income and sales taxes.  Accordingly, we take judicial notice of these Ohio tax provisions under Federal Rule of Evidence 201 and hold that the district court's failure to make specific findings on this issue was harmless error, as we have no reason to believe that resentencing would alter the length of the sentence imposed.  *See* Fed. R. Evid. 201(f) ("Judicial notice may be taken at any stage of the proceeding."); *United States v. Hazelwood*, 398 F.3d 792, 801 (6th Cir. 2005) (noting that remand is unnecessary where "we are certain that any such error was harmless—*i.e.* any such error did not affect the district court's selection of the sentence imposed") (citation and quotation marks omitted).

III.

Maken briefly argues that his sentencing violated the Sixth Amendment, as he was tried on the basis of his conduct in 1993 and 1994, but was sentenced on the basis of conduct extending from 1993 through 2004.  Maken contends that he did not receive a sentence based on notice in an indictment and on facts proven by the government to the jury beyond a reasonable doubt.

Although *United States v. Booker*, 543 U.S. 220 (2005), rendered the Sentencing Guidelines advisory rather than mandatory, "*Booker* did not eliminate judicial fact-finding." *United States v. Stone*, 432 F.3d 651, 654-55 (6th Cir. 2005).[8]  "[T]his court and others have repeatedly held since *Booker* that district judges can find the facts necessary to calculate the appropriate Guidelines range using the same preponderance-of-the-evidence standard that governed prior to *Booker*." *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006); *see also Rita v. United States*, 127 S.Ct. 2456, 2465-66 (2007) ("This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence."); *United States v. Cook*, 453 F.3d 775, 777 (6th Cir. 2006) ("Because the guidelines are now advisory and not mandatory, a District Court may rely on extra-verdict facts or on those other than which the defendant has specifically admitted when it calculates [the defendant's] sentence.")  Here, the district court properly found, by a preponderance of the evidence, that the total amount of tax loss from 1993 through 2004 caused by Maken exceeded $40,000, resulting in a base offense level of 13 under U.S.S.G. § 2T1.4.  The court also acknowledged the advisory nature of the Guidelines post-*Booker*.  We accordingly conclude that the district court committed no constitutional error in engaging in judicial fact-finding to calculate Maken's sentence under the advisory Guidelines regime.

---

[7]Section 5747.19 of the Ohio Revised Code mandates the filing of income tax returns.  Section 5747.99(A) provides that "[w]hoever violates section 5747.19 of the Revised Code . . . is guilty of a felony of the fifth degree."  Pursuant to section 2929.14(A)(5), if the court elects to impose a prison term on an offender "[f]or a felony of the fifth degree, the prison term shall be six, seven, eight, nine, ten, eleven, or twelve months."

Likewise, section 5739.30(A) of the Ohio Revised Code requires the filing of sales tax returns.  The penalties applicable for violating section 5739.30(A) are prescribed in section 5739.99(B), which states that "[w]hoever violates (A) of section 5739.30 . . . shall be fined not less than one hundred nor more than one thousand dollars, or imprisoned not more than sixty days, or both."

[8]Maken's sentencing hearing was conducted under the post-*Booker* advisory Guidelines regime.

Additionally, neither of Maken's sentences—12 months imprisonment for his violation of 26 U.S.C. § 7203 and 30 months imprisonment for his violation of 26 U.S.C. § 7201—exceeded the proscribed statutory maximums enumerated in the applicable statutes; thus, Maken's sentence presents no problem under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). *See United States v. Flores*, 477 F.3d 431, 438 (6th Cir. 2007) ("*Apprendi* is not triggered so long as the judicial findings of fact do not result in the defendant receiving a sentence that exceeds the statutory maximum.").

IV.

For the foregoing reasons, we affirm the judgment of the district court.