RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0249p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 14-5256

DENNIS WAYNE HODGE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Frankfort.
No. 3:13-cr-00012-1—Gregory F. Van Tatenhove, District Judge.

Argued: April 22, 2015

Decided and Filed: October 20, 2015

Before: SILER, MOORE, and STRANCH, Circuit Judges.

─────────────

**COUNSEL**

**ARGUED:** David J. Guarnieri, MCBRAYER, MCGINNIS, LESLIE & KIRKLAND, PLLC, Lexington, Kentucky, for Appellant. Adam C. Reeves, UNITED STATES ATTORNEY'S OFFICE, London, Kentucky, for Appellee. **ON BRIEF:** David J. Guarnieri, Philip C. Lawson, MCBRAYER, MCGINNIS, LESLIE & KIRKLAND, PLLC, Lexington, Kentucky, for Appellant. Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

SILER, J., delivered the opinion of the court in which MOORE and STRANCH, JJ., joined. STRANCH, J. (pp. 14–15), delivered a separate concurring opinion.

1

---

**OPINION**

---

SILER, Circuit Judge.　Dennis Hodge pleaded guilty to one count of receipt of child pornography.　18 U.S.C. § 2252(a)(2).　At sentencing, the district court declined to give him a two-point base-offense-level reduction under USSG § 2G2.2(b)(1).　This reduction applies when "the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor" with no intent "to traffic in, or distribute, such material."　Because Hodge was also secretly recording videos of his fifteen-year-old stepdaughter naked, the district court found that his "conduct" was not "limited to" the receipt or solicitation of child pornography.　Hodge argues that his video voyeurism was not conduct that was "relevant" to his "offense conduct" under USSG § 1B1.3.　We **AFFIRM** his sentence.

**I.**

In October 2011, Hodge's stepdaughter ("TA"), stepped out of the shower and noticed something unusual:　the door on the bathroom cabinet, which hung from the wall directly across from the shower, was open.　Inside the cabinet, TA found a micro video recording device.　According to the presentence report:

> TA rewound the video and viewed footage of herself exiting the shower naked and wrapping a towel around herself.　The video then went dark for a few seconds, then began playing again.　She then saw [Hodge] setting up the camera on one of her bedroom shelves.　The video showed him turning out the light and leaving the room.　The video contained images of TA walking into her bedroom wearing only a towel and then taking the towel off to get dressed.　TA placed the camera back in its location and phoned her mother, who instructed her to obtain the tape from the camera; however, when she returned to the camera the [storage medium] had already been removed.

When Hodge's wife, TA's mother, came home, Hodge told her he had destroyed the recording. TA's mother called the police, who obtained a search warrant.　A police forensic investigation of Hodge's laptop computer uncovered multiple child pornography images.

A federal grand jury indicted Hodge on two counts: one for receipt of child pornography, 18 U.S.C. § 2252(a)(2),[1] and one for possession of child pornography, 18 U.S.C. § 2252(a)(4)(B). Both counts were based on the images he had downloaded from the internet. Hodge pleaded guilty to receipt of child pornography, and the possession count was dismissed. At the time of his federal indictment, Hodge also had two pending state charges, one of which related to the voyeurism toward his stepdaughter. Hodge has not been prosecuted for either of these state charges.

Hodge's presentence report recommended a two-point base-offense-level reduction under USSG § 2G2.2(b)(1) "because the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor and the defendant did not intend to traffic in, or distribute, such material." The government objected to this reduction. The government noted that in *United States v. Fore*, 507 F.3d 412, 415 (6th Cir. 2007), we held that three facts must be proven for the § 2G2.2(b)(1) reduction to apply: (1) the defendant's base offense level must be 22; (2) the defendant's conduct must be "limited" in scope to the mere receipt or solicitation of child pornography; and (3) the defendant did not intend to traffic in or distribute the child pornography. The government argued the second factor was not met because Hodge's conduct "included the production or attempted production of child pornography," i.e., the secret recordings of TA.

At sentencing, Hodge's counsel argued that the court should not consider the voyeur videos because they did not qualify as "relevant conduct" under USSG § 1B1.3(a)(1). Hodge claimed that under *United States v. Fowler*, 216 F.3d 459, 460-61 (5th Cir. 2000), receipt—in this case, downloading—of pornography happens at a discrete moment in time. He argued that because § 1B1.3(a)(1) requires that relevant conduct must have "occurred during the commission of the offense of conviction," to qualify, the video recording had to have occurred simultaneously to the downloading.

---

[1]Section 2252(a)(2) punishes "[a]ny person" who "knowingly receives . . . any visual depiction using any means or facility of interstate or foreign commerce . . . including by computer" if "the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct" and the "visual depiction is of such conduct."

In response, the government noted that the indictment specified that the offense conduct occurred "in or around October, 2011," and that the plea agreement referred to multiple "downloads." The government argued that Hodge's *possession* of the pornography (a lesser-included offense of receipt) continued through the entire period that he was both receiving (downloading) child pornography and creating the videos of TA.

The district court sustained the government's objection to the offense level reduction. The court reasoned:

> I don't think you can actually conclude that the defendant's conduct was ["limited" under § 2G2.2(b)(1)(B)]. There is this other conduct, and I think to determine whether or not it's appropriately considered, you do look at the relevant conduct guideline, which is Section 1B1.3(a), which defines relevant conduct and says, you know, conduct that occurs during the commission of the offense of conviction. So this is all going on at the same time. I'm not persuaded that [*Fowler*] necessarily supports the conclusion that there has to be this absolute precise temporal connection, that the [voyeur video recording] has to have occurred exactly at the moment that a web site is downloaded. I think as [the government] points out in terms of the time period in the indictment and the multiple accessing of the web sites and what we know about the timing of the video, that it falls within the definition of relevant conduct[. T]herefore, I don't think it's actually appropriate in the end to provide for the two-level reduction for those reasons.

## II.

We review a district court's findings of fact at sentencing for clear error and its legal conclusions regarding the Sentencing Guidelines de novo. *United States v. Maken*, 510 F.3d 654, 656-57 (6th Cir. 2007). The applicability of USSG § 2G2.2(b)(1) to Hodge's sentence is one such legal question.

## III.

Under USSG § 2G2.2(b)(1),

> (1) If (A) [the defendant's base offense level is 22]; (B) the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor; and (C) the defendant did not intend to traffic in, or distribute, such material, decrease by **2** levels.

This appeal concerns subsection (b)(1)(B): was Hodge's conduct "limited to the receipt or solicitation" of child pornography? The question can be answered only by considering what constitutes relevant conduct.

USSG § 1B1.3(a) defines relevant conduct. This section explains that generally the defendant's base offense level, specific offense characteristics, and Chapter Three adjustments "shall be determined on the basis of the following:"

(1)  (A)  all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

     (B)  in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense;

(2)  solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction;

(3)  all harm that resulted from the acts and omissions specified in subsections (a)(1) and (a)(2) above, and all harm that was the object of such acts and omissions; and

(4)  any other information specified in the applicable guideline.

"The goal of the relevant conduct provision is to allow a court to impose sentences commensurate with the gravity of the offense." *United States v. Kappes*, 936 F.2d 227, 229 (6th Cir. 1991).

The government's position is that Hodge's surreptitious videotaping of his stepdaughter qualifies as relevant conduct under either § 1B1.3(a)(1)(A) because it "occurred during the commission of the offense of conviction" or § 1B1.3(a)(2) because his crime is a groupable offense under USSG § 3D1.2(d) and recording the shower videos was "part of the same course of conduct or common scheme or plan as the offense of conviction."

**IV.**

As a threshold matter, to be "relevant" under § 1B1.3(a)(2), the conduct must be a criminal offense that carries the potential for incarceration. *Maken*, 510 F.3d at 659. To be "relevant," the conduct need not result in a conviction. *Id.* at 658; *see also United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994) (noting that criminal conduct may be "relevant" even though a statute of limitations forecloses prosecution). "Relevant conduct" may include state crimes over which the federal courts have no jurisdiction. *See, e.g., Maken*, 510 F.3d at 657 (finding a defendant's state tax evasion crimes "relevant" to his federal tax evasion case); *United States v. McDaniel*, 398 F.3d 540, 553 (6th Cir. 2005) (finding that the victims' losses related to the defendant's state convictions were "relevant" to his federal convictions when the modus operandi, the victims, and the time period were the same); *United States v. Hough*, 276 F.3d 884, 898 (6th Cir. 2002) (finding a defendant's unprosecutable juvenile drug sales "relevant" to determining the quantity of drugs he sold for sentencing purposes). However, "conduct that can never lead to criminal conviction cannot constitute relevant conduct." *Maken*, 510 F.3d at 658 (citing *United States v. Shafer*, 199 F.3d 826, 830-31 (6th Cir. 1999)); *see also United States v. Harris*, 200 F. App'x 472, 496-97 (6th Cir. 2006) (holding that "losses from conduct not shown to have been criminal" were not relevant to sentencing).

Therefore, in order to qualify as "relevant" conduct under § 1B1.3, Hodge's shower videos must have constituted a criminal violation that could result in incarceration—either under federal or state law. Relevant conduct must also bear some logical relationship to the offense of conviction. *See United States v. Ellison*, 113 F.3d 77, 83 (7th Cir. 1997) (finding that possessing child porn magazines was "relevant" to a prosecution for receipt of child porn videos because the acts were not "unrelated"—both acts "indicate[d]" the defendant's "dangerous propensities in the realm of sexual exploitation of minors").

**A.**

We note first that the voyeur videos described in Hodge's presentence report do not appear to qualify as child pornography under federal law. TA reported to investigators that she "viewed footage of herself exiting the shower naked and wrapping a towel around herself," and

that another recording "contained images of TA walking into her bedroom wearing only a towel and then taking the towel off to get dressed."

To qualify as a federal child pornography offense, the images must meet the definition of "sexually explicit conduct" found in 18 U.S.C. § 2256(2)(B). The only sub-definition that could conceivably apply here is § 2256(2)(B)(iii), which captures "graphic or simulated lascivious exhibition of the genitals or pubic area." We have adopted the "*Dost* factors" as a rubric for analyzing whether a particular image is lascivious. *United States v. Brown*, 579 F.3d 672, 680 (6th Cir. 2009) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)).

Because we have not seen the videos, we cannot determine they were lascivious. *See United States v. Gleich*, 397 F.3d 608, 614 (8th Cir. 2005) (finding a "mooning" picture not lascivious); *Doe v. Chamberlin*, 299 F.3d 192, 196 (3d Cir. 2002) (finding that pictures of naked girls showering at a beach were not lascivious).

**B.**

As we explained above, to qualify as relevant conduct under USSG § 1B1.3(a)(2), the conduct must constitute a logically related crime—federal or state—that carries incarceration as a potential punishment. *Maken*, 510 F.3d at 657-58. Hodge's voyeur videos meet this standard because they constitute a federal child pornography attempt crime. *See* 18 U.S.C. § 2251(a) & (e) (imposing a minimum 15-year sentence for attempted sexual exploitation of a minor).

A useful comparison case is *United States v. Sims*, 708 F.3d 832 (6th Cir. 2013). In *Sims*, we held that non-lascivious voyeur videos of a girl getting dressed after showering could support a charge of attempted production of child pornography. *Id*. at 835. The elements of attempted production are the intent to create child pornography and that the defendant "took a substantial step towards the creation of child pornography." *Id*. The crucial issue in *Sims* was the defendant's intent because videotaping the naked child through a bedroom window constituted a substantial step. *Id*.; *see also United States v. Vanderwal*, 533 F. App'x 498, 501-02 (6th Cir. 2013) (holding that hidden-camera videos of naked girls showering and using the bathroom, though not actually lascivious, could support a verdict for attempted production of child pornography).

Because Hodge's voyeuristic video recording resembles the attempted production of child pornography in *Sims* and *Vanderwal*, his conduct meets our threshold requirement that to be relevant conduct under USSG § 1B1.3(a)(2), the conduct must be a logically related crime that could result in incarceration.

Additionally, Hodge's presentence report notes that he faced a pending state charge for "voyeurism." He was never indicted or prosecuted on this charge. Kentucky's "voyeurism" statute, Ky. Rev. Stat. § 531.090, makes it a Class A misdemeanor when a person intentionally uses any video or image recording device

> for the purpose of observing, viewing, photographing, filming, or videotaping the sexual conduct, genitals, an undergarment worn without being publicly visible, or nipple of the female breast of another person without that person's consent . . . and . . . [t]he other person is in a place where a reasonable person would believe that his or her sexual conduct, genitals, undergarments, or nipple of the female breast will not be observed, viewed, photographed, filmed, or videotaped without his or her knowledge.

A Class A misdemeanor in Kentucky may result in a prison sentence that "shall not exceed twelve (12) months." Ky. Rev. Stat. § 532.090(1). Therefore, even though it went unprosecuted, Hodge's conduct appears to be a violation of state law that could have resulted in incarceration.

## V.

Having determined that Hodge's voyeur videos could have resulted in incarceration, we now consider whether they otherwise qualify as relevant conduct under USSG § 1B1.3(a). The government argues that Hodge's shower videos qualify under both § 1B1.3(a)(1)(A) and § 1B1.3(a)(2).

## A.

Subsection (a)(1) contains two subparagraphs followed by a trailing clause. It defines the following as relevant conduct:

> (1) (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and

(B)    in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense[.]

The issue here is whether Hodge's voyeuristic video recording "occurred during the commission of the offense of conviction," in accordance with the trailing clause. Hodge insists, as he did before the district court, that because "receipt," i.e., downloading, happens at a discrete moment in time, to be relevant under (a)(1)'s trailing clause, the voyeur videos must have been made at the exact moment as one of his pornographic downloads. The district court correctly rejected this argument.

The indictment against Hodge alleged that "[i]n or around October 2011 . . . Hodge did knowingly receive" child pornography over the internet. Hodge pleaded guilty to this count, and the plea agreement specified Hodge "searched for and knowingly downloaded over 100 images of child pornography . . . in October 2011."

It may be true in some cases that receipt (in this case downloading) of child pornography is an action that happens "at a discrete moment." *United States v. Fowler*, 216 F.3d 459, 461 (5th Cir. 2000). But it is also true that receipt is accompanied by possession, and that possession is a lesser-included offense of receipt. The government therefore argues that Hodge's possession, as an offense lesser included in his offense of receipt, is part of Hodge's "offense of conviction." The receipt and possession are inseparable. Together they are the behavior underlying "the offense of conviction." To phrase it differently, Hodge's possession of child pornography is not "relevant conduct" to the offense of conviction; it is *included within* the offense of conviction.[2]

---

[2]In contrast, possessing *other* child pornography images unrelated to the images received or solicited under the count of conviction may count as relevant conduct. *See United States v. Nance*, 611 F.3d 409, 416-17 & nn. 6-7 (7th Cir. 2010).

Here, Hodge's *possession* of the child pornography he downloaded "[i]n or around October 2011" continued through the period he was secretly video recording his stepdaughter. Under this reasoning, the video recording happened "during" the offense of conviction. It happened while Hodge continued to possess the child pornography, and this possession is contained within the offense of conviction—the receipt of that pornography.

Because Hodge's continuing offense of possession was included within his offense of conviction for receipt, he did in fact produce the voyeur videos "during the commission of the offense of conviction." The behavior was therefore relevant conduct under USSG § 1B1.3(a)(1)(A).

**B.**

Likewise, Hodge's video recording of his stepdaughter qualifies as relevant conduct under USSG § 1B1.3(a)(2).

Subsection (a)(2) states:

> solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all acts and omissions described in subdivisions (1)(A) and (1)(B) above that were part of the same course of conduct or common scheme or plan as the offense of conviction [are relevant conduct].

First, Hodge's offense of conviction qualifies as one "for which § 3D1.2(d) would require grouping of multiple counts." This is because § 3D1.2(d) includes "[o]ffenses covered by . . . § 2G2.2." Section 2G2.2 addresses various child pornography offenses, including receipt and possession.

Hodge insists that § 1B1.3(a)(2) does not apply because his relevant conduct—attempted production—would not be grouped with his offense conduct—receipt—under § 3D1.2(d). Even assuming he is correct, the guideline is not concerned with whether the *relevant conduct* would be grouped with the *offense conduct*. Section 1B1.3(a)(2) simply says its provisions apply to groupable "offenses," and then authorizes courts to consider other acts that "were part of the same course of conduct or common scheme or plan as the offense of conviction." For example, application note 3 to § 1B1.3 authorizes courts in drug distribution cases to consider unindicted sales as relevant conduct. In the same way, an unindicted child exploitation offense (like

No. 14-5256                            *United States v. Hodge*                    Page 11

Hodge's voyeur videos) may be relevant to a groupable child exploitation "offense of conviction," provided that the unindicted acts were part of the same "course of conduct" or "common scheme" as the offense.

The second phrase of § 1B1.3(a)(2) limits relevant conduct to "all acts and omissions described in subdivisions (1)(A) and (1)(B) above." There is an ambiguity as to whether the phrase in (a)(2)—"all acts and omissions described in subdivisions (1)(A) and (1)(B) above"— refers to (a)(1)(A) and (a)(1)(B) *with* the trailing clause or *without* the trailing clause. In other words, do both (a)(1) and (a)(2) require that the conduct occur "during" (or in preparation for or while covering up) the offense of conviction?

In *United States v. Roxborough*, 99 F.3d 212, 214-15 (6th Cir. 1996), we interpreted (a)(2)'s post-1992 clause to incorporate *all* of subsection (a)(1). But in other cases, we have applied (a)(2) without mentioning (a)(1)'s trailing clause. *See United States v. Henderson*, 17 F. App'x 362, 366-67 (6th Cir. 2001); *United States v. Hill*, 79 F.3d 1477, 1481-85 (6th Cir. 1996); *United States v. Pitts*, 72 F.3d 130, 1995 WL 730461, at *3 (6th Cir. Dec. 8, 1995) (unpublished table opinion) (per curiam). For example, in *Hill*, which predates *Roxborough*, we discussed at length the factors that might cause a defendant's conduct to be relevant under (a)(2) even when more than a year elapsed between the conduct at issue and the conduct underlying the offense of conviction. 79 F.3d at 1483-85. Additionally, two other Circuits have expressly held that (a)(2) does not incorporate (a)(1)'s trailing clause. *See United States v. Ashford*, 718 F.3d 377, 382-83 (4th Cir. 2013); *United States v. Horton*, 693 F.3d 463, 476 (4th Cir. 2012); *United States v. Johnson*, 347 F.3d 635, 638-39 (7th Cir. 2003); *see also* USSG § 1B1.3 cmt. n.9(B) (contemplating that relevant conduct under (a)(2) could be "relatively remote" in time to the offense of conviction).

Even if (a)(2) incorporates (a)(1)'s trailing clause, it makes no difference in this case. As we have already explained, Hodge's voyeuristic video recordings occurred "during the commission of the offense of conviction," in accordance with the trailing clause.

This brings us to the final requirement of subsection (a)(2), which renders conduct relevant if it was "part of the same course of conduct or common scheme or plan as the offense of conviction." Hodge's attempted production of child pornography was both part of a "common

scheme or plan" with his offense of conviction and part of the same "course of conduct." Under application note 9(A) to § 1B1.3(a)(2), a "common scheme or plan" requires that the offenses "be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." *See Hill*, 79 F.3d at 1481. Here, Hodge had a common purpose—fulfillment of his sexual interest in minors—for his receipt of child pornography and his production of the voyeur videos. The voyeur videos were thus part of a "common scheme" with his offense of conviction.

Similarly, under application note 9(B) to § 1B1.3(a)(2), offenses are the same course of conduct "if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses." Three factors guide this analysis: "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." *Hill*, 79 F.3d at 1481-82 (quoting USSG § 1B1.3 cmt. n.9(B). Here, Hodge's conduct was an "ongoing series of offenses." The time interval was close. The voyeuristic video recording and the downloading of internet child pornography also both happened multiple times. And the fact that both sets of conduct involved Hodge's sexual interest in minors shows a high degree of similarity. The downloading and attempted production were therefore part of the same course of conduct.

Accordingly, Hodge's voyeur videos were relevant conduct under USSG § 1B1.3(a)(1)(A) and (a)(2).

**VI.**

Because Hodge's voyeur videos were relevant conduct under USSG § 1B1.3(a), his conduct was not "limited to the receipt or solicitation" of child pornography under USSG § 2G2.2(b)(1)(B). Although no evidence suggests Hodge intended to distribute any child pornography, his criminal behavior related to his sexual interest in children went beyond mere "receipt or solicitation." *See Fore*, 507 F.3d at 415-16. (holding that a defendant's conduct was not "limited to" receipt or solicitation of child pornography because he was also convicted of interstate transportation of child pornography, even though there was no evidence of intent to distribute); *Ellison*, 113 F.3d at 83. Hodge's relevant conduct included behavior that qualified as attempted production of child pornography under federal law and as misdemeanor voyeurism

under Kentucky law.   The district court properly concluded that Hodge did not qualify for § 2G2.2(b)(1)'s two-point base-offense-level reduction.

**AFFIRMED.**

---

**CONCURRENCE**

---

JANE B. STRANCH, concurring.  I join my colleagues in affirming Hodge's sentence because the language used by the Sentencing Commission in USSG § 2G2.2(b)(1)(B) does not accomplish the objective the Commission intended to achieve.

USSG § 2G2.2(b)(1) became effective on November 1, 2004, after Congress passed the Prosecutorial Remedies and Other Tools Against the Exploitation of Children Today Act of 2003 (PROTECT Act).  Pub. L. 108–21, 117 Stat. 650 (2003).  In drafting guideline amendments to respond to the PROTECT Act, the Commission consolidated two existing guidelines:  § 2G2.2, which applied to trafficking, receipt, and transportation of child pornography, and § 2G2.4, which applied to possession of child pornography.  The Commission then published a revised § 2G2.2 and deleted § 2G2.4.  USSG App. C, Amendment 664 (Nov. 1, 2004).

In its Reason for Amendment, USSG App. C, Amendment 664 (Nov. 1, 2004), the Commission explained that the PROTECT Act established a five-year mandatory minimum sentence and increased the statutory maximum sentence for child pornography trafficking and receipt offenses.  In light of these increased statutory penalties, the Commission sought to maintain proportionality in setting the guideline base offense levels for possession, receipt, and trafficking of child pornography.  The Commission increased the base offense level for possession from 15 to 18 and set the base offense level for trafficking at 22.  The Commission deemed simple receipt offenses—those where defendants received child pornography but harbored no intent to distribute the material received—worthy of an intermediate base offense level of 20:

> The amendment . . . provides a two-level decrease at § 2G2.2(b)(1) for a defendant whose base offense level is level 22, whose conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor, and whose conduct did not involve an intent to traffic in or distribute the material.  Thus, *individuals convicted of receipt* of child pornography *with no intent to traffic or distribute the material* essentially *will have an adjusted offense level of level 20*, as opposed to an offense level of level 22, for receipt with intent to traffic, prior to application of any other specific offense characteristics.  The

Commission's review of these cases indicated the conduct involved in such "simple receipt" cases in most instances was indistinguishable from "simple possession" cases. The statutory penalties for "simple receipt" cases, however, are the same as the statutory penalties for trafficking cases. Reconciling these competing concerns, the Commission determined that a two-level reduction from the base offense level of level 22 is warranted, *if the defendant establishes that there was no intent to distribute the material.*

USSG App. C, Amendment 664, page 59 (emphasis added).

I understand from this explanation that the Commission intends for base offense level 20 to apply if the defendant's conduct *of conviction* is limited to receipt of child pornography and the defendant had no intent to distribute the material received. *See United States v. Goluba*, 672 F.3d 304, 309–10 (5th Cir. 2012) (DeMoss, J., dissenting). Unfortunately, that is not what § 2G2.2(b)(1)(B) says. The provision refers without limitation to "the defendant's conduct." In view of the express language used, I am constrained to agree with my colleagues that "the defendant's conduct" includes relevant conduct as defined in USSG § 1B1.3. Taking into account the defendant's relevant conduct of videotaping his stepdaughter, I am unable to conclude that "the defendant's conduct was limited to the receipt or solicitation of material involving the sexual exploitation of a minor." The district court did not err in declining to apply § 2G2.2(b)(1) in favor of the defendant.

The Commission may decide in the future to revise § 2G2.2(b)(1)(B) to effectuate the intended meaning of the provision, but until that occurs, I agree that we must interpret the provision in accordance with the relevant conduct guideline. For these reasons, I concur in the majority opinion.